**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------x

**JAY GLENN,**

        **Plaintiff,**      **RULE 26(f) DISCOVERY**
                     **PLAN REPORT**

   **-against-**

                     **10-cv-8287 (WHP)**

**THOMAS FORTUNE FAY, STEVEN R. PERLES**
**and FAY & PERLES,**

          **Defendants.**
-------------------------------------------------------------------------x

   The parties have conferred and state pursuant to Rule 26(f):

## I.  Summary of Case

   Plaintiff Jay Glenn is an attorney, as are defendants Thomas Fay and Steven

Perles. Defendant Fay & Perles is a law firm in which Fay and Perles are partners.

Plaintiff Glenn seeks a charging lien for legal representation, client referrals and

expenses in the case of Peterson, et al. v. Islamic Republic of Iran, et al., 01-2094

(RCL)(D.D.C.) (hereinafter "Peterson Litigation"). The Republic of Iran ("Iran") defaulted

in the Peterson Litigation, and the Court appointed a Special Master to assess the

damages owed to the Peterson Plaintiffs. Fay & Perles, and a third attorney, Allen

Rothenberg, represented all of the plaintiffs in the Peterson Litigation. Fay & Perles

engaged plaintiff Glenn to provide certain legal services related to the proof of damages

claims on behalf of certain plaintiffs in the Peterson Litigation. Fay, Perles and Fay &

Perles (collectively, "Defendants") contend that Glenn did not fulfill his contractual

obligations to Fay & Perles in connection with the Peterson Litigation. Glenn also

asserts that Defendants agreed to pay him a referral fee for 40 additional plaintiffs in the Peterson Litigation whom he located and referred to Fay and Perles..

The Peterson Litigation arose out of an October 23, 1983 terrorist attack in which a truck carrying a large explosive device drove into the center of the U.S. Marine barracks in Beirut, Lebanon, killing 241 American servicemen and injuring many others. Plaintiff is aware of five additional cases Defendants have filed based upon this terrorist attack (hereinafter "Beirut Cases"). On information and belief, the plaintiffs in the Peterson Litigation and the Beirut Cases and numerous parties in other cases involving Iran have been joined as third party defendants in Levin, et al. v.  Bank of New York, JP Morgan Chase, Societe Generale and Citibank, 09-Civ 5900  (RPP) (SDNY). There are two additional cases involving the Peterson Litigation currently pending in the Southern District of New York: Peterson, et al. v. Islamic Republic of Iran, et al., 16 Misc. 302 (BSJ) (SDNY) and Peterson, et al. v. 650 Fifth Avenue Company, et al., 10-cv-05900 (RPP)(SDNY). All of the litigation files in those cases (the "Collections Actions") are under seal, and Plaintiff Glenn does not have access to them pursuant to the sealing orders.

In 2002 Glenn was recruited as one of a number of damage attorneys who were retained by Fay & Perles to work on the damages phase of the Peterson Litigation on a contingent fee basis. The written agreement between Fay & Perles and Glenn called for Glenn to aid with prosecuting the case of certain Peterson Plaintiffs in exchange for a contingent fee of 3% of all damages actually collected by these plaintiffs. Glenn alleges that, while performing these services, Glenn became aware of numerous additional potential plaintiffs for the Peterson Litigation, and that he advised Defendant

2

Fay of his findings.  Glenn further alleges that Defendant Fay and Plaintiff Glenn

entered into an agreement that these new plaintiffs would be joined in the Peterson

Litigation and that Plaintiff Glenn would receive an additional referral fee equal to

11.1111% of the amount of any damages collected by those plaintiffs.  Glenn alleges

this agreement is memorialized in a series of documents.   Defendants deny that there

was any such agreement.  In addition, Defendants state that the supposed "additional

potential plaintiffs" to whom Glenn refers: (a) were all members of families that were

already plaintiffs in the Peterson Litigation and listed on the attachment to the June 13,

2003 agreement between Glenn and Fay & Perles; (b) were persons unknown to Glenn

but known to the Defendants before the parties executed the June 13, 2003 agreement;

and (c) were derivative solatium claimants from the families who were already

represented by Fay & Perles prior to June 13, 2003.  Glenn disputes that these

additional plaintiffs were known to Defendants or listed in the attachment to the June 13,

2003 agreement.

Glenn alleges that he investigated and proved the damage claims of 103

Peterson Plaintiffs who have been awarded a combined judgment of $309,741,881.00

and that the 40 Peterson referrals resulted in a combined judgment of $111,750,000.00.

Defendants state that the cases of the Peterson plaintiffs for whom Glenn provided

services had already been thoroughly investigated prior to Glenn's involvement in the

Peterson Litigation and that Glenn conducted roughly one-half of the depositions

required to prove those plaintiffs' damages.  Fay or an employee of Fay & Perles

conducted the remaining depositions.  Glenn asserts that he provided all of the required

services including preparation and full submission of 103 claims to a Special Master and

3

that Fay or his employee conducted a handful of depositions, at Fay's suggestion, as a matter of convenience or to permit Fay's novice employee to gain experience.

Plaintiff Glenn claims that, because the Court entered a default judgment in the Peterson Litigation on September 7, 2007, Plaintiff Glenn is entitled to total contingent compensation of $22,263,181.43 plus interest for legal services and referrals and $15,455.06 plus interest in expenses in the event that the plaintiffs in the Peterson Litigation succeed in collecting the full amount of the judgment entered in their favor. Plaintiff Glenn alleges that the $22,263,181.43 is made up of $9,292,256.43 for legal services provided pursuant to his written agreement with Fay & Perles and a $12,416,666.66 referral fee pursuant to his agreement with Defendants. Defendants will contest Glenn's entitlement to those payments based on his failure to perform in accordance with the written contract governing his engagement by Fay & Perles.

Glenn alleges that, in March 2010, after 8 years of representation, Defendant Fay advised Plaintiff Glenn that Defendants were not going to pay Glenn the contingent referral fee. Defendants note that Glenn entered a written agreement with Fay & Perles on June 13, 2003. That contract provides that "said document constitutes the only agreement between Fay and Perles and Associate Counsel," referring to Glenn. Defendants state that no other agreement was made with Glenn by anyone on behalf of any Defendant. Defendants also note that none of the Peterson plaintiffs have collected any damages as of this date, although Fay & Perles continues to pursue efforts to secure collection. Plaintiff states that his agreement with Defendants relating to referrals was entered into subsequent to the June 2003 written agreement.

In addition to the Peterson Litigation, the Defendants have commenced several other lawsuits against Iran on behalf of family members of those injured in the Beirut bombing.  The Plaintiffs in these other litigations have sought and have been awarded punitive damages.  The Defendants herein did not seek punitive damages for the Peterson plaintiffs.  Glenn believes under section 1083 of the National Defense Authorization Act of 1983 they were permitted to apply retroactively for punitive damages under 28 U.S.C. § 1605A(c).  Glenn asserts they failed to do so in the time permitted.  Glenn observes the Court noted this and referred to the Peterson Plaintiffs as: "The 'Do-Nothing' Plaintiffs: Those Who Have Invoked Neither Section1083(c)(2) Nor (c)(3) in Their Efforts to Retroactively Claim the New Entitlements Under Section 1605A."  Decision of Judge Lamberth in In Re: Islamic Republic of Iran Terrorism Litigation, dated September 30, 2009, at page 119.

Glenn believes that this decision results in the Defendants having a conflict of interest in determining how the proceeds of any recovery are divided among the various plaintiffs in all of the cases related to the Beirut bombing in which Defendants serve as counsel.

The Defendants disagree with Glenn's allegation, which has nothing to do with this dispute, and note that the supposed conflict that Glenn imagines is purely theoretical because no Peterson Plaintiff has collected any damages related to the Beirut bombing.  Punitive damages were permitted in cases brought under the Foreign Sovereign Immunities Act ("FSIA"), following enactment of P.L. 104-132 and P.L. 104-208, and the decision of the United States District Court For The District Of Columbia, District Judge Royce C. Lamberth, in *Flatow v. Iran*, 999 F. Supp. 1(1998).  The

availability of punitive damages in cases involving FSIA claims was codified in P.L. 105-277.  However, in Public Law 106-396, the VICTIMS OF TRAFFICKING AND VIOLENCE PROTECTION ACT OF 2000, § 2002 repealed that provision while providing for payment of certain compensatory damages.  Following the adoption of Public Law 106-396, various legislators proposed bills designed to reinstate the availability of punitive damages in cases involving FSIA violations.  Ultimately, Congress passed § 1083 of the Defense Authorization Act of 2008, which became effective January 28, 2008.  In that statute, 28 U.S.C. § 1605A(c) provides for punitive damages awards in connection with FSIA violations.  The judgment in the Peterson Litigation was entered on September 7, 2007, four months and twenty one days before passage of § 1083 of the Defense Authorization Act of 2008.

The Defendants have submitted requests for a pre-motion conference to the Court in anticipation of their filing of motions to dismiss the Complaint.  In response to the pre-motion letters filed by Defendants with respect to Glenn's initial Complaint, Glenn filed an Amended Complaint.  As explained in Defendants' renewed request for a pre-motion conference, Defendants do not believe that the amendment remedied the defects exhibited by Glenn's claims.  In particular, Defendants contend that: (a) the Court cannot exercise personal jurisdiction over Defendants; (b) Glenn has not alleged an actual case or controversy because his contract-based claims are contingent upon the occurrence of multiple uncertain events; (c) no basis exists for imposing the "charging lien" that Glenn requests; (d) Glenn's efforts to invoke the Court's in rem jurisdiction fail due to his non-compliance with 28 U.S.C. § 1655; (e) Glenn cannot establish his entitlement to obtain access to the court filings in the Collections Actions in

violation of the protective orders in those cases; (f) if Glenn believes otherwise, he should seek leave to obtain access to those filings in the Collections Actions; and (g) once the Court dismisses Glenn's contract-based claim, his second claim to obtain access to the filings in the Collections Actions does not satisfy the amount in controversy requirement for a diversity action.  Plaintiff contends that all of Defendants claims are baseless.

## II.    Discovery Plan

### A.    Rule 26(f)(3) Issues

**1.    Rule 26(f)(3)(A).**  The parties do not believe that the Court should alter the default rules regarding the timing, form, or requirement for disclosures under Rule 26(a), except that: (a) Defendants believe that the Court should issue a stay of discovery pending the resolution of Defendants' motions to dismiss; and (b) the parties propose that the Court adopt the schedule set forth below for pre-trial and expert disclosures.  Defendants believe that a stay of discovery is appropriate in light of the absence of any urgency to resolve Glenn's alleged entitlement to the payment of contingent attorneys' fees related to a 1983 attack for which no plaintiff has yet collected any payment.  Plaintiff does not believe there are grounds for either the motions to dismiss or a stay.  The parties communicated with the Court by letter concerning the issues underlying the motion to dismiss, which resulted in Plaintiff serving and filing an amended complaint.

The parties agree that they will make their initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1) on or before January 7, 2010.

### 2.    Rule 26(f)(3)(B) – Proposed Schedules

The parties propose the following schedules for discovery in this action.

| Event | |
|---|---|
| Initial Disclosures | January 7, 2010 |
| Close of Fact Discovery | 6 months after resolution of motions to dismiss |
| Plaintiff's Expert Reports | 30 days thereafter |
| Defendants' Expert Reports | 30 days thereafter |
| Close of Expert Discovery | 15 days thereafter |

### 3.    Rule 26(f)(3)(B) – Subject Matter of Discovery

#### a.    Witnesses

Plaintiff seeks the depositions of the following individuals, all of whom Plaintiff believes to have information relating to the retention of attorneys in the Peterson Litigation and/or the payment of same:

- Thomas Fortune Fay, Esq.;
- Steven R. Perles, Esq.;
- Richard D. Heideman, Esq.;
- Noel J. Nudelman, Esq.;
-The Honorable Lorraine Ray, Special Master;
- Allen Louis Rothenberg, Esq.;
- Fay's secretary Ruth;
- David J. Cook, Esq.;
-Tracey Reichman Kalik, Esq.;
- Barry L. Leibowitz, Esq.;
- Daniel W. Gaskil, Esq.;
- Any attorneys or third parties who may have a claim against the proceeds in the Peterson Litigation, including, but not limited to, referring attorneys, consulting attorneys, and collection attorneys.

Defendants reserve their right to cross-examine the foregoing witnesses.  In addition, Defendants intend to depose Glenn and any attorney who assisted him in performing services for the Peterson Plaintiffs.  Defendants believe that establishing any fees owed to Glenn by any of the 40 Peterson plaintiffs whom Glenn alleges he referred to Fay & Perles will require the depositions of those individuals because Glenn acknowledges that he has no written retainer agreement with any plaintiff in the Peterson Litigation.  Defendants also reserve their right to depose the remaining Peterson Plaintiffs in the even that the claims articulated by Glenn during discovery reveal that any of the Peterson Plaintiffs know information relevant to this action. Defendants reserve the right to supplement or alter their proposed deponents based upon the content of the discovery conducted by the parties.

Plaintiff believes that any relevant information that the Peterson Plaintiffs possess is undisputed and that their testimony is not necessary.  Plaintiff Glenn notes that at least 25 of the clients he represented are actually Estates.  Plaintiff reserves the right to cross-examine any such witnesses who are deposed and also supplement or alter his proposed deponents list based upon the content of the discovery conducted by the parties.

### b.   Documents

Plaintiff seeks the following documents:

- All agreements between Plaintiff and Defendants;
- All documents referring to communications between Plaintiff and Defendants concerning compensation for attorneys;
-All documents concerning compensation to be paid to referring attorneys;
- All documents concerning any other contingent payment relating to the Peterson Litigation;

-All documents concerning Defendants decision not to assert a claim for punitive damages; including but not limited to all documents concerning Defendants' decision not to amend to assert such a claim;

-All documents concerning Defendants' decision not to replead their claims after enactment of 28 U.S.C. Sec. 1605A, and their decision not to assert a claim under 28 U.S.C. Sec. 1610g

-All communications with the Peterson Plaintiffs concerning collection of the judgment against Iran.

-All documents relating to potential conflicts of interest in collection actions against Iran between the Peterson Plaintiffs and the other terrorism victims who have asserted claims against Iran including but not limited to those other plaintiffs represented by Fay, Perles and Rothenberg.

- All documents relating to negotiations and/or agreements either formal or informal between any Plaintiffs' attorneys with claims against Iran to divide and/or share in recovered Iranian assets.

Plaintiff reserves the right to supplement or alter the subject matter of his proposed

document requests based upon the content of the discovery conducted by the parties.

Defendants believe that many of the categories of documents that Glenn plans to

request have no relevance to the parties' claims or defenses.  Defendants intend to

seek the production of documents relevant to the following matters: (a) the agreements

between or among the parties concerning the legal services to be provided by Glenn in

connection with the Peterson Litigation; (b) the agreements between or among the

parties concerning the payments to be made to Glenn in connection with those services;

(c) Glenn's agreements with any of the Peterson Plaintiffs concerning the payment of

fees to him; (d) the services provided by Glenn in connection with the Peterson

Litigation; (e) communications involving the parties or the Peterson plaintiffs concerning

the legal services provided by Glenn in connection with the Peterson Litigation or the

fees to be paid to Glenn in connection with those services; (f) the claims asserted by

Glenn in his Amended Complaint or any subsequent amended pleading; and (g) the

Defendants' defenses and potential counterclaims.  Defendants reserve the right to

supplement or alter the subject matter of their proposed document requests based upon the content of the discovery conducted by the parties.

### c.    Interrogatories and Requests to Admit

The parties reserve the right to propound interrogatories and requests to admit concerning the same subject matters as their document requests.

### 4.    Rule 26(f)(3)(C)

The parties intend to produce those documents that they maintain in electronic format in compliance with their obligations under Fed. R. Civ. P. 34(b)(2).

### 5.    Rule 26(f)(3)(D)

The parties agree that they will produce privilege logs concerning any documents or information protected from disclosure by the attorney-client privilege, the work product doctrine or any other applicable privilege within thirty days of the date by which the opposing party called for the production of the allegedly privileged documents or information.  The parties agree that they need not log their post-litigation communications with their counsel in this action.

### 6.    Rule 26(f)(3)(E)

The parties may request that the Court alter the ten deposition limit imposed by Fed. R. Civ. P. 30(a)(2).  The parties intend to raise with the Court the issue of the appropriate number of depositions in this action after the parties have produced documents.

### 7.    Rule 26(f)(3)(F)

The parties agree that the Court should enter a protective order to protect the confidentiality of certain documents and information that the parties will disclose in this action.  The parties intend to submit a proposed protective order to the Court prior to the January 7, 2010 Rule 16 conference.

## III.    Settlement

Defendant Perles will not oppose a proper request submitted by Plaintiff in the Collections Actions to obtain access to filings in those actions.  Defendants maintain that they have no right to provide Glenn with access to the filings in the Collections Actions and that Glenn has no right to obtain access to those documents.  Indeed, Defendants maintain that providing Glenn with access to those documents would violate the protective orders in the Collections Cases.  Defendants maintain that the protective orders in the Collections Actions were entered upon the request of the entities holding the assets of the judgment debtor (*i.e.,* Iran) and the United States Department of the Treasury.  The parties are unable to settle Count 1 of the Amended Complaint, which seeks a declaration concerning Glenn's entitlement to the payment of certain legal fees.

## IV.    Insurance

There is no applicable insurance.

## V.    Necessary Parties

Defendants assert that all of the entities that maintain custody of or claim an ownership interest in the property that is the subject of the Collections Actions are

necessary parties to this action, in which Glenn seeks a declaration regarding the

ownership of that property.  Plaintiff disputes this.

Daniel Cobrinik (DC 6406)

by Ian L. Blant
(IB-4878)

Attorney for Plaintiff
475 Park Avenue South – 19th Floor
New York, New York 10016
(212) 725-6888

FAY KAPLAN LAW
By: /s/ Annie P. Kaplan
777 Sixth Street, N.W., Suite 410
Washington DC 20001

Attorneys for Thomas Fortune Fay and
Fay & Perles

SHALOV STONE BONNER & ROCCO LLP
By: /s/ James P. Bonner
260 Madison Avenue, 17th Floor
New York, NY 10016
(212) 239-4340

Attorneys for Steven R. Perles

Index No. 10CV8287 (WHP)


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------------------------------------------x
JAY GLENN,

                                    Plaintiff,

            -against-

THOMAS FORTUNE FAY, STEVEN R. PERLES
And FAY & PERLES

                                    Defendants.


-------------------------------------------------------------------------------------------------------------------x



-------------------------------------------------------------------------------------------------------------------

### RULE 26(f) DISCOVERY PLAN REPORT

-------------------------------------------------------------------------------------------------------------------









**DANIEL COBRINIK**
**Attorney for Plaintiff**
**475 Park Avenue South - 19th Floor**
**New York, New York 10016**
**(212) 725-6888**