# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **JAY GLENN,** ) | Civ. Action No. 10-cv-8287 (WHP) |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| **THOMAS FORTUNE FAY,** *et al*. ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OF LAW OF THOMAS FAY, STEVEN PERLES AND FAY & PERLES IN SUPPORT OF THEIR MOTION TO DISMISS**

James P. Bonner
Stone Bonner & Rocco LLP
260 Madison Avenue, 17th Floor
New York, New York 10016
(212) 239-4340

*Attorney for Defendant Steven Perles*

Annie Kaplan
Fay Kaplan Law
777 Sixth Street NW, St. 410
Washington, DC 20001
(202) 589-1300

*Attorney for Defendants Thomas Fortune Fay and Fay and Perles*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT……………………………………………………………………1

STATEMENT OF FACTS . ..………………………………………………………………………4

ARGUMENT……………………………………………………………………………..6

I.      THE STANDARDS GOVERNING A MOTION TO DISMISS …………………..……6

II.     PLAINTIFF HAS NOT ESTABLISHED A SUFFICIENT BASIS FOR THE COURT
        TO EXERCISE PERSONAL OR *IN REM* JURISDICTION ………………...………7

        A.  Lack of Personal Jurisdiction………………………………………….……7

        B.  Lack of *In Rem* Jurisdiction…………………………………………………...11

III.    THE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE GLENN
        HAS NOT ASSERTED A JUSTICIABLE CLAIM .………………..…………………..12

IV.     PLAINTIFF HAS NOT ALLEGED ANY VIABLE CLAIM FOR IMPOSING THE
        CHARGING LIEN HE SEEKS BY MEANS OF HIS FIRST AND SECOND CAUSES
        OF ACTION…………………………………..………………………………….15

V.      PLAINTIFF'S THIRD CAUSE OF ACTION MUST BE DISMISSED
        FOR A LACK OF SUBJECT MATTER JURISDICTION……………..…………16

VI.     PLAINTIFF CANNOT OBTAIN THE INJUNCTIVE RELIEF HE SEEKS FROM
        THIS COURT..……………………...…………………………………………17

VII.    THE CASE SHOULD BE DISMISSED FOR IMPROPER VENUE…..……………...17

CONCLUSION………………………………………………………………..18

<u>**TABLE OF AUTHORITIES**</u>

<u>***Cases***</u>

*Allen v. Wright*, 468 U.S. 737 (l984)…………………………………………………......…12

*Agribank, FCB v. Cupples*,
    850 F.Supp. 780 (E.D. Ark 1993)………………………………………………......... 14

*Ashcraft v. Iqbal*,
    129 S.Ct. 1937 (2009)…………………………………………………….............7

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)…………………………………………...…………..…..7

*Brink's Ltd v. South African Airways*,
    93 F.3d 1022 (1996) ……………………………………………………..…15

*Cargo Partner AG v. Albatrans, Inc.*,
    352 F.3d 41 (2d Cir. 2003)………………………………………………...…6

*C.B.C. Wood Products, Inc. v. LMD Integrated Logistics Services, Inc.*,
    455 F.Supp.2d 218 (E.D.N.Y. 2006)…………………………………….…8

*City of New Rochelle v. Town of Mamaroneck*,
    111 F.Supp.2d 353 (S.D.N.Y. 2000) ………....................................................12

*CutCo Indus. v. Naughton*,
    806 F.2d 361 (2d Cir. 1986)………………………………………………...……10

*Democratic Central Comm. v. Washington Metropolitan Area Transit Comm'n*,
    941 F.2d 1217 (D.C. Cir. 1991)………………………………………….........…16

*Di Loreto v. Costigan*, 600 F. Supp. 2d 671 (E.D. Pa. 2009),
    *aff'd*, 351 Fed. Appx. 747 (3d Cir. Nov 6, 2009)……………………….......……10

*El Cid, Ltd v. New Jersey Zinc Co.*,
    444 F.Supp. 845 (S.D.N.Y 1977)…………………….....................................9

*E-Z Bowz, L.L.C. v. Prof'l Prod. Research Co.*,
    2003 U.S. Dist. LEXIS 15257 (S.D.N.Y. Sept. 5, 2003)………………………..…10

*Firestone v. Wiley*,
    485 F.Supp.2d 694 (E.D. Va. 2007) …….…………………….....................14

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984) …………………….....................................................9

*International Shoe v. State of Washington*,
    326 U.S. 310 (1945)…………………….....................................................9

*Lazard Freres & Co. v. Protective Life Ins. Co.*,
    108 F.2d 1531, 1539 (2d Cir. 1997) ............................................................15

*Levitt v. FBI*,
    70 F.Supp.2d 346 (S.D.N.Y. 1999)…………………….........................…..12

*Meteoro Amusement Corp. v. Six Flags, Inc.*,
    267 F.Supp.2d 263 (N.D.N.Y. 2003) ……........................................................17

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996)…………………….......................................9

*Morgan v. McCotter*,
    365 F.3d 882 (10th Cir. 2004)……………………....................……....13

*Nat'l Park Hospitality Ass'n v. Dep't of Interior*,
    538 U.S. 803 (2003)…………………….................................................13

*New Mexicans for Bill Richardson v. Gonzales*,
    64 F.3d 1495 (10th Cir. 1995)…………………….................…......……13

*Nursan Metalurji Endustrisi A.S. v. M/V "Torm Gertrud"*,
    2009 U.S. Dist. LEXIS 75805 (S.D.N.Y. 2009)……….....................…………9

*N.Y. Civil Liberties Union v. Grandeau*,
    528 F.3d 122 (2d Cir. 2008)……………………....................…....……14

*Republic of Iraq v. Beaty*,
    129 S.Ct. 2183 (2009) ................................................................... 13

*Robinson v. Overseas Military Sales Corp.*,
    21 F.3d 502 (2d Cir. 1994)……………………....................…....…… 7

*Rubin v. Islamic Republic of Iran*,
    No. 08-2805, 2011 U.S. App. LEXIS 6394 (2011)…………...........................13

*Shaffner v. Heitner*,
    433 U.S. 186 (1977)……………………...............................................9

*Sterling Nat'l Bank & Trust Co. v. Fidelity Mortgage Investors*,
    510 F. 2d 870 (2d Cir. 1975)……………………………………………………9

*Welsback Elec. Corp. v. MasTec North America, Inc.*,
    804 N.Y.S.2d 805 (2d Dept. 2005) ……..........................................................15

*Whitaker v. Am. Telecasting, Inc.*,
    261 F.3d 196 (2d Cir. 2001)…………………………………….....………7, 8

*Wiwa v. Royal Dutch Petroleum Co.*,
    226 F.3d 88 (2d Cir. 2000)…………………………………….....………8, 9


### *Statutes*

28 U.S.C. § 1332…………………………………………………….....………16

28 U.S.C. § 1391…………………………………………………….....………17

28 U.S.C. § 1655…………………………………………………….....…………12

28 U.S.C. § 2201……………………………………………………........………13

### *Rules*

D.C. R. Prof. Cond. 1.5 (2006)…………………………………………….....… 5

Fed. R. Civ. P. 12(b)(1)……………………………………………….....……. 14

Fed. R. Civ. P. 12(b)(2)……………………………………………….....……. 11

Fed. R. Civ. P. 12(b)(3)…………………………………………………….....…. 1

Fed. R. Civ. P. 12(b)(6)……………………………………………….....……. 16

Ill. R. Prof. Cond. 1.5 (1995)…………………………………………….....…. 5

Defendants Thomas Fay, Steven Perles and Fay & Perles (collectively, "Defendants") respectfully submit this Memorandum of Law in Support of their Motion to Dismiss Plaintiff's Second Amended Complaint (the "Complaint" or "Compl.") pursuant to Fed. R. Civ. P. 12(b)(1), (b)(2), (b)(3) and (b)(6).

## PRELIMINARY STATEMENT

This case involves a misguided effort by Plaintiff Jay Glenn ("Plaintiff" or "Glenn") to grab attorneys' fees to which he has no entitlement.  Indeed, Glenn concedes that *no lawyer* has yet earned a nickel of attorneys' fees related to the underlying litigation in Peterson v. Islamic Republic of Iran, Case No. 01-cv-02094 (D.D.C.) (RCL).  In that case, Defendants pursued claims on behalf of the majority of the 241 U.S. military servicemen killed in the October 23, 1983 terrorist bombing of the U.S. Marine Barracks in Beirut, Lebanon as well as the servicemen's family members.  As Glenn acknowledges, counsel in the Peterson action will earn their fees *only* if they succeed in *collecting* the judgment that Defendants secured against Iran. Compl. ¶46.  Thus, Glenn's claims represent an unseemly effort to decide his purported entitlement to attorneys' fees before the clients that he assisted in representing in the damages stage of the Peterson action secure any recovery for the grievous injuries they suffered nearly 28 years ago.

Although Glenn has twice amended his Complaint in response to the pre-motion letters that Defendants submitted to the Court regarding the grounds for their motions to dismiss, his Complaint still exhibits numerous fatal flaws that compel dismissal.  Glenn has not alleged sufficient facts to establish that the Court can exercise personal jurisdiction over the Defendants, who practice law in Washington, DC and who have never lived in this jurisdiction.  Id. at ¶¶3, 6, 7.  Research has not uncovered any case in which a court found that lawyers were subject to

personal jurisdiction in a district merely because their *clients* pursued collection efforts in that jurisdiction related to a judgment secured elsewhere by the attorneys.  Indeed, courts have found that appearing as counsel *pro hac vice* in a given district does not subject lawyers to general jurisdiction.  This jurisdictional defect mandates the dismissal of the Complaint in full.

Plaintiff also fails to allege any facts that would support the exercise of *in rem* jurisdiction here.  The <u>Peterson</u> Plaintiffs allege that the assets that are the subject matter of the collection actions currently pending in this District before Judges Barbara Jones, Robert Pattison, Jr. and Richard Howell (the "Collection Actions") are the property of Iran.  The <u>Peterson</u> Plaintiffs have not yet secured ownership of those assets, and Defendants and Plaintiff clearly have no ownership stake in them.  Thus, Glenn impermissibly seeks to have the Court declare the parties' ownership stakes in property that none of them own, and that none of the <u>Peterson</u> Plaintiffs own.  No court has ever exercised *in rem* jurisdiction in a matter presenting facts remotely similar to those at issue here.

Glenn's allegations also demonstrate that the Court lacks subject matter jurisdiction over his claims.  In Glenn's "Count 1" and "Count 2," he requests that the Court declare that – *__if__* Defendants' clients succeed in collecting assets from Iran – he is entitled to a "charging lien" for: (a) 3% of the recovery obtained by the <u>Peterson</u> Plaintiffs whose damages he was supposed to prove; and (b) 11.11% of the recovery obtained by the <u>Peterson</u> Plaintiffs Glenn claims to have referred to Defendants for representation.  <u>Id.</u> at ¶¶237-42.  In light of the highly contingent nature of these claims (the <u>Peterson</u> Plaintiffs have waited nearly three decades for any recovery from Iran), controlling case law dictates that Glenn has not alleged an actual case or controversy over which the Court should exercise jurisdiction.  Rather, he seeks precisely the type of

advisory opinion that the federal courts have consistently refused to provide to early-bird plaintiffs such as Glenn.

Even if the Court could properly exercise jurisdiction over Plaintiff's claims, his allegations fail to state any viable cause of action. Glenn's claimed entitlement to attorneys' fees arises from a Washington, DC litigation for which he was retained as one of numerous "damages counsel" pursuant to a written agreement explicitly providing for the application of District of Columbia law (the "Fee Agreement"). Id. at ¶46 and Exhibit A. Under Washington, DC law, attorneys may assert the "charging lien" that Glenn seeks *only* against their clients, not co-counsel. As a result, Glenn cannot obtain from *Defendants* the relief he seeks by means of his first two causes of action.

Finally, Glenn's third cause of action requests that the Court declare his right to review the filings in the Collections Actions against Iran currently pending before other judges in this District. As Glenn concedes, however, the filings in the Collection Actions are subject to a protective orders entered by United State District Judge Royce Lamberth in the Peterson action and the judges in the Collections Actions (collectively, the "Protective Order"). Needless to say, no authority suggests that this Court should impinge upon the discretion of Judge Lamberth or the judges in the Collections Actions by ordering Defendants to provide to Glenn documents that must be kept confidential pursuant to the Protective Order. Thus, this final cause of action also fails to state a claim entitling Glenn to any relief, and his Complaint should be dismissed with prejudice given his inability to articulate a viable cause of action despite the multiple amendments he has already filed.

### STATEMENT OF FACTS

Defendants Fay and Perles practice law in Washington, DC, where the Fay & Perles partnership is located.  Compl. ¶¶3, 6-9.  Plaintiff is a resident of Illinois.  Id. at ¶1.  Plaintiff is the brother-in-law of defendant Fay.  Id. at ¶4.  None of the Defendants are licensed to practice law in this jurisdiction.  Id. at ¶7.  Nor does any Defendant reside in the State of New York.  Id. at ¶¶3, 6.

This lawsuit relates to Defendants' representation of 153 Marine Corp families in an earlier action brought in the United States District Court for the District of Columbia against Iran for its role in the suicide bombing and complete destruction of the Marine Barracks in Beirut, Lebanon on October 23, 1983.  Id. at ¶19.  That attack resulted in the death of 241 American servicemen.  Id. at ¶19.  In that lawsuit, Peterson  v. Islamic Republic of Iran, Case No. 01-cv-02094 (D.D.C.) (RCL), Defendants represented the family members of deceased servicemen and the injured survivors.  Id. at ¶22.  The Peterson Plaintiffs alleged that Iran had aided and abetted the terrorists who murdered their family members and were responsible for their injuries.  Id. at ¶20.

Judge Lamberth bifurcated the Peterson action into liability and damages phases.  In the liability portion of the litigation, Defendants established Iran's culpability for the Marine barracks attack.  Thereafter, Judge Lamberth entered judgment in favor of the Peterson Plaintiffs on liability on May 30, 2003.  In addition, Judge Lamberth directed the Peterson Plaintiffs to arrange for the appointment of special masters and to submit evidence of the injuries suffered by the Peterson Plaintiffs to the masters, who in turn were charged with submitting reports to the Judge Lamberth so that he could determine the amount of damages to be awarded to the servicemen and their families.

To assist them in proving the <u>Peterson</u> Plaintiffs' damages, Defendants enlisted the assistance of fourteen "damages counsel," all of whom were assigned specific families that Defendants represented.  On June 13, 2003, Defendants retained Glenn as one of those damages attorneys by means of the written agreement designated as Exhibit A to Glenn's Complaint.  <u>Id.</u> at ¶46 and Ex. A.  Critically, the Fee Agreement explicitly dictates that Washington, D.C. law governs its terms.  <u>Id.</u> at Ex. A.  The Fee Agreement is the only written contract between Plaintiff and Defendants.  Indeed, the contract expressly provides that it is the only agreement between the parties and that it supersedes all supposed oral agreements.  <u>Id.</u>  Nevertheless, Glenn alleges that he entered an oral agreement with Fay on behalf of Fay & Perles that entitles Glenn to tens of millions of dollars in "referral fees" (<u>id.</u> at ¶¶26, 49) although such an undisclosed agreement to share contingency fees is unlawful under both controlling Washington, DC ethical standards and those of Illinois, where Glenn resides.  D.C. R. Prof. Cond. 1.5 (2006); Ill. R. Prof. Cond. 1.5 (1995).

Glenn's Fee Agreement, like the contracts entered with the other damages attorneys, entitles him to a contingent fee equal to 3% of any damages *actually collected* by the <u>Peterson</u> Plaintiffs assigned to him by Fay & Perles.  Compl. ¶46.  While not critical to this motion, Defendants maintain that Glenn fell woefully short of performing the duties necessary to entitle him to even the 3% fee specified in his Fee Agreement.

After Defendants and the damages counsel presented the <u>Peterson</u> Plaintiffs' proofs to the special masters and to Judge Lamberth, the court entered judgment in favor of the <u>Peterson</u> Plaintiffs in the total amount of $2,656,944,877.00.  <u>Id.</u> at ¶27.  Pursuant to the terms of the Fee Agreement, the entry of that judgment concluded Glenn's services as a damages attorney in the <u>Peterson</u> case.  <u>Id.</u>, Ex. A.  Notably, Glenn never entered his appearance in the <u>Peterson</u> litigation

in the District of Columbia or in any subsequent action commenced to enforce the <u>Peterson</u> judgment.

Counsel other than the Defendants are currently seeking to enforce the <u>Peterson</u> judgment against certain assets that the <u>Peterson</u> Plaintiffs allege Iran owns by means of the Collection Actions.  Those cases are pending before Judges Barbara Jones, Robert Pattison, Jr. and Richard Howell in this District.  Pursuant to the Protective Order, all filings in the Collection Actions remain under seal.  Thus, an order of this Court prohibits Glenn, who is not counsel for any <u>Peterson</u> Plaintiff at this time, from reviewing those filings.

Glenn asserts three causes of action.  First, he alleges entitlement to a declaratory judgment that he has a charging lien equal to the 3% fee specified in the Fee Agreement for those <u>Peterson</u> Plaintiffs he was charged with representing in the damages phase of that litigation.  <u>Id.</u> at ¶237.  Second, Glenn alleges that a supposed oral contract entitles him to a charging lien equal to one-third of the fees collected by Fay & Perles in connection with the firm's representation of the <u>Peterson</u> Plaintiffs that Glenn allegedly "referred" to Fay & Perles.  <u>Id.</u> at ¶237.  Third, Glenn requests that the Court invade the discretion of Judge Lamberth and the judges in the Collections Actions and declare, in this separate proceeding, that Glenn is entitled to review the filings declared confidential by the Protective Order.  <u>Id.</u> at ¶252.

**ARGUMENT**

## I.      THE STANDARDS GOVERNING A MOTION TO DISMISS

For the purposes of this motion, Plaintiff's well-pled allegations are accepted as true. <u>See, e.g., Cargo Partner AG v. Albatrans, Inc.</u>, 352 F. 3d 41, 44 (2d Cir. 2003).  Conclusory statements, however, are not entitled to a presumption of veracity; courts should not "credit a complaint's conclusory statements without reference to a factual context."  <u>Ashcroft v. Iqbal</u>, 129

6

S.Ct. 1937, 1954 (2009).  Moreover, the Supreme Court has made it clear that the federal rules

requires that a complaint must include "enough facts to state a claim to relief that is plausible on

its face." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1973 (2007).  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1249, citing

Twombly, 127 S.Ct. at 1965.  "A pleading that offers 'labels and conclusions' or a 'formulaic

recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it

tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 129 S.Ct. at 1249,

quoting Twombly, 127 S.Ct. at 1965.  In short, Rule 8 "does not unlock the doors of discovery

for a plaintiff armed with nothing more than conclusions." Ashcroft, 129 S.Ct. at 1950.

## II.    PLAINTIFF HAS NOT ALLEGED A SUFFICIENT BASIS FOR THE COURT TO EXERCISE PERSONAL OR *IN REM* JURISDICTION

### A.  LACK OF PERSONAL JURISDICTION

"The plaintiff bears the burden of establishing that the court has jurisdiction over the

defendant when served with a Rule 12(b)(2) motion to dismiss." Whitaker v. Am. Telecasting,

Inc., 261 F.3d 196, 208 (2d Cir. 2001), citing Robinson v. Overseas Military Sales Corp., 21 F.3d

502, 507 (2d Cir. 1994).  In assessing whether personal jurisdiction exists over particular

defendants, the "traditional set of indicia" that "New York courts have focused on" include

"whether the [defendant] has an office in the state, whether it has any bank accounts or other

property in the state, whether it has a phone listing in the state, whether it does public relations

work there, and whether it has individuals permanently located in the state to promote its

interests." Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 98 (2d Cir. 2000).  Glenn fails to

allege any of these facts, or any similar facts that might suffice to support the exercise of

personal jurisdiction over the Defendants.

Defendant Thomas Fay is a Maryland resident who practices law in the District

Columbia.  Id. at ¶3, 8-9.  Steve Perles is a Florida resident who practices law in the District of

Columbia.  Id. at ¶¶ 6, 8-9.  Their law partnership, Fay & Perles, is also a Washington, DC entity

that maintains offices only in that jurisdiction.  Id. at ¶8.  Plaintiff does not allege that any

Defendant is admitted to practice law in New York.  Nor does Plaintiff assert any well-pleaded

facts that suggest that any Defendant undertakes business activity on a regular basis in New

York.  Moreover, the contracts that Plaintiff cites as the basis of his claims related to a litigation

undertaken outside of this jurisdiction, and the parties expressly agreed that their disputes would

be governed by District of Columbia law in their only written agreement.  Id., Ex. A.

As a result, Glenn must rely exclusively upon the happenstance that Iran maintained

assets in this District and that *Defendants' clients* – not Defendants themselves – are pursuing the

collection of those assets in the Collection Actions as the sole basis for exercising jurisdiction

over Defendants in this matter.  Research has not uncovered a single decision in which a court

held that attorneys become subject to personal jurisdiction in a particular district merely because

their *clients* pursue collections activities in that district with respect to a judgment secured

elsewhere.

Because Glenn asserts jurisdiction on the basis of the parties' diversity, this Court can

exercise jurisdiction over Defendants only to the extent authorized by the New York law.  E.g.,

C.B.C. Wood Products, Inc. v. LMD Integrated Logistics Services, Inc., 455 F.Supp.2d 218, 222

(E.D.N.Y. 2006), citing Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001).

The governing New York personal jurisdiction statutes are CPLR §§ 301 and 302.[6]  Id.  Both

---

[6] Glenn alleges personal jurisdiction may be asserted under CPLR §§ 301 and 302.  Compl.
¶¶43-44.

sections require a showing of minimum contacts between New York and the Defendants consistent with the Fourteenth Amendment.  C.B.C. Wood Products, 455 F.Supp.2d at 222; accord, e.g., El Cid, Ltd. v. New Jersey Zinc Co., 444 F. Supp. 845, 849 (S.D.N.Y l977) (holding that, in order to invoke the New York long arm statute, the cause of action must arise from the contacts establishing minimum contacts); Sterling Nat'l Bank & Trust Co. v. Fidelity Mortgage Investors, 510 F.2d 870, 873-74 (2d Cir. l975) (holding that when determining whether the New York long-arm statute applies, the court should consider the totality of the defendant's actions within New York); see also, Shaffner v. Heitner, 433 U.S. 186, 206 (1977) (holding that, in order to exercise *in rem* jurisdiction over a party, the contacts "must be sufficient to justify exercising jurisdiction over the interest of persons in things,'" and the standard for determining the interest is the "minimum-contacts standard" discussed in International Shoe v. State of Washington, 326 U.S. 310 (1945)).

Under a general jurisdiction theory, Glenn must "demonstrate the defendant's 'continuous and systematic general business contacts'" within this District.  Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 568 (2d Cir. 1996), citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984).  That standard is satisfied only where defendants conduct business in the forum "not occasionally or casually, but with a fair measure of permanence and continuity."  Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 95 (2d Cir. 2000); Nursan Metalurji Endustrisi A.S. v. M/V "Torm Gertrud", 2009 U.S. Dist. LEXIS 75805, at *7 (S.D.N.Y. 2009) ("[P]ersonal jurisdiction will not lie for any company that simply seeks the assistance of New York firms on an isolated or intermittent basis.").

Glenn's allegations fall well short of satisfying this standard.  He alleges only that Defendants have engaged in certain activity in connection with the Collections Actions.  He

concedes, however, that Defendants are neither counsel nor parties in those matters.  He asserts no well-pleaded allegations that satisfy the requirements of cases such as Iqbal to demonstrate *anything* that Defendants did in this jurisdiction or elsewhere in connection with the Collections Actions.  In light of Glenn's failure to assert any well-pleaded facts that demonstrate that Defendants engaged in regular and continuous activity in this state, no basis exists for the Court to exercise jurisdiction over his claims.

Indeed, even in cases where counsel actually *appeared* in a single action as *pro hac vice* counsel, courts have found those activities insufficient to support the exercise of personal jurisdiction.  See, e.g., Di Loreto v. Costigan, 600 F.Supp.2d 671, 691-92 (E.D. Pa. 2009), aff'd, 351 Fed. Appx. 747 (3d Cir. Nov. 6, 2009); E-Z Bowz, L.L.C. v. Prof'l Prod. Research Co., 2003 U.S. Dist. LEXIS 15257, at *7-8 (S.D.N.Y. Sept. 5, 2003).  Surely, if litigating a matter in a jurisdiction's courts does not subject an attorney to personal jurisdiction, no basis for jurisdiction exists here, where Defendants' *clients* – not Defendants themselves – are involved in the Collections Actions.[7]

In sum, Glenn's sparse allegations compel the conclusion that no Defendant has engaged in any purposeful activity in the State of New York.  To subject himself to personal jurisdiction, a defendant must "purposefully" avail "[himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws."  CutCo Indus. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986) (citations omitted).  Defendants filed the original Peterson lawsuit and contracted with Glenn in Washington, DC.  They are neither counsel in nor parties to the Collections Actions.  Thus, Defendants may not be haled into court in New York to answer

---

[7]  Defendants have not filed a motion to appear *pro hac vice* in the Collections Actions, and Glenn makes no allegation to the contrary.

to Glenn's claims, which relate exclusively to Defendants' actions outside of this state.  Forcing

Defendants, who do not reside in New York and who conduct their work in Washington, DC, to

litigate this matter in this jurisdiction would unfairly burden Defendants and offend the

traditional notions of fair play and substantial justice.  Accordingly, the Court should dismiss the

Complaint in full pursuant to Fed. R. Civ. P. 12(b)(2).

### B.   LACK OF *IN REM* JURISDICTION

Glenn also incorrectly asserts that the Court may exercise *in rem* jurisdiction over his

claims under 28 U.S.C. § 1655.  As the lineup of parties in the Collections Actions demonstrates,

however, neither Glenn nor Defendants has any actual claim to an ownership interest in the

assets that are the subject of the Collections Actions.  Rather, the Collections Actions involve the

adjudication of the competing interests of the Peterson Plaintiffs, other victims of Iran's

terrorism and the nominal owners of the assets that the Peterson Plaintiffs allege Iran owns to

those assets.  Neither Defendants nor Glenn is a party to the Collections Actions because none of

those parties has any ownership stake in the allegedly Iranian-owned assets.  Thus, the presence

of those assets in this District provides no basis for the Court to exercise jurisdiction over this

dispute.

Indeed, while Plaintiff invokes the nomenclature of *in rem* jurisdiction, the relief he seeks

is actually exclusively *in personam* in nature.  Specifically, Glenn seeks a declaration that he is

entitled to a charging lien entitling him to the collection of a specific dollar amount of fees *from*

*Defendants* if the Peterson Plaintiffs succeed in the Collections Actions.  Moreover, the

declarations that Glenn seeks would entitle him to specific payments *irrespective* of whether they

arise from any property secured as a result of the Collections Actions or from unrelated

collections actions prosecuted outside of New York.  Thus, the *in rem* allegations (which

11

appeared in Glenn's pleadings only after Defendants demonstrated the absence of personal

jurisdiction in their pre-motion submissions) cannot suffice to justify the exercise of jurisdiction

over this matter.[8]

Finally, even if *in rem* jurisdiction could conceivably be appropriate here, Glenn is

precluded from seeking relief under 28 U.S.C. § 1655 because he failed to follow the "warning

order" procedure explicitly required by the statute.[9]  28 U.S.C. § 1655; <u>Levitt v. FBI</u>, 70

F.Supp.2d 346, 351 n.37 (S.D.N.Y. 1999) ("a Plaintiff seeking to invoke Section 1655, however,

must apply for a 'warning order' directing the absent defendant to appear or plead by a day

certain.  [Plaintiff] has not sought such an order, which is essential to the court's ability to

proceed to judgment").

## III.   THE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE GLENN HAS NOT ASSERTED A JUSTICIABLE CLAIM

Article III of the Constitution limits the jurisdiction of federal courts to "actual 'cases or

controversies'" and requires that a case be ripe for adjudication.  <u>See</u>, <u>e.g.</u>, <u>Allen v. Wright</u>, 468

U.S. 737, 750 (1984).  The ripeness doctrine prevents a court "from entertaining claims based on

contingent future events that may not occur as anticipated or at all."  <u>E.g.</u>, <u>City of New Rochelle</u>

<u>v. Town of Mamaroneck</u>, 111 F.Supp.2d, 353, 359 (S.D.N.Y. 2000); <u>accord</u>, <u>e.g.</u>, <u>Morgan v.</u>

---

[8]  Glenn's third cause of action – by which he seeks access to the filings in the Collections
Actions – indisputably seeks only *in personam* relief against Defendants.

[9] "In an action in a district court to enforce any lien upon or claim to, or to remove any
encumbrance or lien or cloud upon the title to, real or personal property within the district, where
any defendant can not be served within the State, or does not voluntarily appear, the court may
order the absent defendant to appear or plead by a day certain.  Such order shall be served on the
absent defendant personally if practicable, wherever found, and also upon the person or persons
in possession or charge of such property, if any. Where personal service is not practicable, the
order shall be published as the court may direct, not less than once a week for six consecutive
weeks."  28 U.S.C. § 1655.

McColter, 365 F.3d 882, 890 (10th Cir. 2004) (whether a case is fit for judicial resolution

depends on "'whether the case involves uncertain or contingent future events that may not occur

at all'"), quoting New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1499 (10th Cir.

1995).  Two criteria are generally considered in determining if a case is constitutionally ripe;

first, the fitness of the issue for judicial decision and second, the hardship to the parties of

withholding court consideration.  Nat'l Park Hospitality Ass'n v. Dep't of Interior, 538 U.S. 803,

808 (2003).  A federal court may issue declaratory relief only "[i]n a case of actual controversy

within its jurisdiction."  28 U.S.C. § 2201.

Plaintiff's allegations do not suffice to establish an actual, ripe case or controversy

regarding his entitlement to the charging lien he seeks.  Glenn concedes that his entitlement to

fees is entirely contingent upon the collection of Iranian assets by the Peterson Plaintiffs and a

resulting distribution of payments to the Fay & Perles clients for whom Glenn performed

services pursuant to his contract with Fay & Perles.  The history of collections activities in

Foreign Sovereign Immunities Act anti-terrorism litigation demonstrates irrefutably that it

remains highly uncertain whether the Peterson Plaintiffs will collect any of the assets under

attachment in this District.  See, e.g., Republic of Iraq v. Beaty, 129 S.Ct. 2183 (2009); Rubin v.

Islamic Republic of Iran, No. 08-2805, 2011 U.S. App. LEXIS 6394, at *2-16 (7th Cir. 2011)

(describing a multiple year, ongoing effort by judgment-creditors in a terrorism action to enforce

their judgment against Iranian assets held by the University of Chicago).

Thus, Glenn is putting the proverbial cart before the horse in this case by attempting to

adjudicate his entitlement to his fees according to his factually unsupported formulation and

theories when the Peterson Plaintiffs, who suffered horrific injuries and death, have not yet

collected any funds to satisfy their outstanding judgment against Iran.  This unseemly and

premature effort on Glenn's part to obtain an advisory opinion on his future, contingent fees does not present the type of "actual controversy" required to sustain a viable declaratory judgment proceeding.  See Firestone v. Wiley, 485 F.Supp.2d 694, 700 (E.D. Va. 2007) (dismissing declaratory judgment action where plaintiff shareholder failed to show requisite "immediacy" of injury arising from proposed corporate dissolution because "(i) [the] corporate dissolution has not been approved by [the] shareholders, (ii) [the corporation's] assets are not currently being distributed to shareholders, and (iii) on this record there is no reason to believe that [the corporation's] liability to plaintiff, if any, will exceed its assets"); Agribank, FCB v. Cupples, 850 F. Supp. 780, 782 (E.D. Ark 1993) (refusing to grant declaratory relief regarding the priority of judgment creditor's liens on the claims asserted by their judgment debtors in another proceeding because "there will be no money to fight over unless the [judgment debtors] prevail in their state action").

Glenn's claims fail to satisfy the second prong of the ripeness standard as well because he cannot demonstrate his exposure to any hardship if the Court defers determining the amount of Glenn's fees until after an actual recovery by the Peterson Plaintiffs.  Indeed, despite multiple opportunities, Glenn has never so much as attempted to articulate any prejudice that would result from following the sensible course of allowing the Peterson Plaintiffs to recover actual compensation before adjudicating the amount of the fees to which Glenn is entitled.  Glenn's failure to allege a ripe, justiciable controversy therefore compels the dismissal of his claims pursuant to Fed. R. Civ. P. 12(b)(1).  E.g., N.Y. Civil Liberties Union v. Grandeau, 528 F.3d 122, 131 (2d Cir. 2008) ("Prudential ripeness is a tool that courts may use to enhance the accuracy of their decisions and to avoid becoming embroiled in adjudications that may later turn out to be unnecessary.").

## IV. PLAINTIFF HAS NOT ALLEGED ANY VIABLE CLAIM FOR IMPOSING THE CHARGING LIEN HE SEEKS BY MEANS OF HIS FIRST AND SECOND CAUSES OF ACTION

The contract between Glenn and Fay & Perles expressly provides for the law of the District of Columbia to govern their relationship. The New York courts have consistently enforced similar choice of law agreements. See, e.g., Welsbach Elec. Corp. v. MasTec North America, Inc., 804 N.Y.S.2d 805, 806 (2d Dept. 2005) ("Generally, the courts of this State will uphold choice-of-law provisions unless the jurisdiction whose law is to be upheld has no reasonable relation to the subject agreement, or enforcement of the provision would violate a fundamental public policy of this State.").

Furthermore, even if the parties had not chosen District of Columbia law to govern their disputes, the facts that Plaintiff alleges would compel the conclusion that Washington, DC law controls his first two causes of action. In breach of contract actions, the New York courts traditionally employ a "center of gravity" or "grouping of contacts" analysis to determine what jurisdiction's law controls. See, e.g., Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1539 (2d Cir. 1997); Brink's Ltd. v. South African Airways, 93 F.3d 1022, 1030-31 (2d Cir. 1996). "Under this approach, courts may consider a spectrum of significant contacts, including the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties." Lazard, 108 F.3d at 1539.

That standard dictates that District of Columbia law governs Plaintiff's claims for declaratory relief, which arise out of Defendants' supposed breaches of their contractual agreements with Plaintiff. The parties negotiated the Fee Agreement in Washington, DC. The agreement governed the division of fees related to a litigation venued in that jurisdiction.

15

Compl. at p. 1.  The parties explicitly agreed that District of Columbia law should govern their contractual relationship.  Id., Ex. A.  As a result, the center of gravity test overwhelmingly points to the application of District of Columbia law to Plaintiff's claims.

That conclusion dooms Plaintiff's claims to dismissal.  Under District of Columbia law, associated counsel cannot assert a charging lien against his fellow counsel.  Rather, attorneys can only secure such liens in actions brought against *their clients – i.e.*, the Peterson Plaintiffs jointly represented by Defendants and Glenn.  See Democratic Central Comm. v. Washington Metropolitan Area Transit Comm'n, 941 F.2d 1217, 1219 (D.C. Cir. l991) ("In fact, an attorney's lien is not an appropriate remedy for [the plaintiff] to seek for his alleged claim.  Attorney's liens are asserted by counsel against the client.  [The plaintiff] is not seeking a lien on his client's funds; rather, he wishes the Court to assert a lien against [the defendant], who associated him to do some legal work on the case.").  This blackletter rule compels the dismissal of Plaintiff's first and second causes of action pursuant to Fed. R. Civ. P. 12(b)(6).

## V.   PLAINTIFF'S THIRD CAUSE OF ACTION MUST BE DISMISSED FOR A LACK OF SUBJECT MATTER JURISDICTION

Glenn's third cause of action seeks an order directing Defendants – in direct contravention of the sealing orders in the Collection Actions pending in this District – to provide Plaintiff with copies of the pleadings in those cases.  Standing alone, that claim does not satisfy the $75,000 amount in controversy requirement under 28 U.S.C. § 1332(b).  Thus, once the Court dismisses the first and second claims for lack of jurisdiction or failure to state a cause of action, no basis for federal court subject matter jurisdiction will exist in this action.

## VI.   PLAINTIFF CANNOT OBTAIN THE INJUNCTIVE RELIEF HE SEEKS FROM THIS COURT

Plaintiff's claim for injunctive relief entitling him to view the pleadings in the Collections Actions also disregards the fact that those documents are subject to the Protective Order, which prohibits Defendants from disclosing their contents.  Because this Court has no power to reverse the Protective Order, the third cause of action fails to assert any viable basis for the relief Plaintiff seeks.

## VII.   THE CASE SHOULD BE DISMISSED FOR IMPROPER VENUE

Proper venue in a diversity action is governed by 28 U.S.C. § 1391, which provides:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391.  Here, it appears that Plaintiff relies upon § 1391(2) as the exclusive basis for venuing this action in this District.  As Defendants demonstrate above, however, neither Plaintiff nor Defendants engaged in any acts or omissions in this District.  Furthermore, as Defendants establish in Point II.B., the subject matter of this action is not the property the Peterson Plaintiffs seek to attach.  Rather, Glenn solely seeks a declaration regarding his entitlement to fees, irrespective of what recovery those fees arise from.

Accordingly, § 1391 does not permit venue in this District.  The Court should therefore dismiss the Complaint or, alternatively, transfer this action to Washington D.C., where venue is appropriate.  Meteoro Amusement Corp. v. Six Flags, Inc., 267 F.Supp.2d 263, 278 (N.D.N.Y

2003) (where venue is improper, court may, in its discretion, dismiss the action or transfer it to an appropriate jurisdiction).

## CONCLUSION

For all the foregoing reasons, Plaintiff's complaint against Defendants Fay, Perles, and Fay & Perles should be dismissed in its entirety, or in the alternative, this case should be transferred to the United States District Court for the District of Columbia.

Dated: June 3, 2011                              Respectfully submitted,

                                                 FAY KAPLAN LAW

                                                 By: /s/ Annie Kaplan
                                                 777 Sixth Street NW, St. 410
                                                 Washington, DC 20001
                                                 (202) 589-1300

                                                 *Counsel for Defendants Thomas*
                                                 *Fortune Fay and Fay & Perles*

                                                 STONE BONNER & ROCCO LLP

                                                 By: /s/ James P. Bonner
                                                 260 Madison Avenue, 17th Floor
                                                 New York, New York 10016
                                                 (212) 239-4340

                                                 *Counsel for Defendant Steven Perles*