UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

JAY GLENN,

                    Plaintiff,                          10-CV-8287 (WHP)

          -against-

THOMAS FORTUNE FAY, STEVEN R. PERLES,
FAY & PERLES, ALLAN L. ROTHENBERG, and
ANTHONY LASPADA,

                    Defendants.

------------------------------------------------------------------X


## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

DANIEL COBRINIK (DC 6406)
  Attorney for Plaintiff
276 Fifth Avenue – Suite 405
New York, New York 10001
(212) 725-6888

# TABLE OF CONTENTS

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Point I
The Liberal Pleading Requirements of Fed. R. Civ. P. Rule 8(a) . . . . . . . . . . . . . . . . . . . . . . . . 6

Point II
This Case Presents an "Actual Case or Controversy"
Under U.S. Const. Art. III § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Point III
The Court Has In Rem Jurisdiction Over the Assets Which Are
The Subject of This Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Point IV
The Court Has Personal Jurisdiction Over Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Point V
Glenn's Claims Should Not Be Dismissed On the Merits . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Point VI
Venue Is Proper In This District . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Point VII
Glenn Withdraws His Claim for Injunctive Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## TABLE OF AUTHORITIES

### Federal Cases

*Abbott Labs v. Gardner*, 387 U.Sii. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) . . . . . . . . . . . . 10

*Aetna Life Ins. Co. of Hartford, Conn. v. Haworth,* 300 U.S. 227,
57 S.Ct. 461, 81 L.Ed. 617 (1937) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*AgribankFCB v. Cupples*, 850 F.Supp. 780 (E.D. Ark. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
ii
*Alto Products Corp. v. Ratek Industries Ltd.*, 1996 WL 497027
(S.D.N.Y. September 3, 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Arar v. Ashcroft*, 585 F.3d 559 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,*
171 F.3d 779, 784 (2d Cir.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Broadview Chem. Corp. v. Loctite Corp.*, 417 F.2d 998 (2d Cir. 1969),
*cert. denied*, 397 U.S. 1064, 25 L. Ed. 2d 686, 90 S. Ct. 1502 (1970) . . . . . . . . . . . . . . . . . . . . . 8

*Bldg. & Constr. Trades Council of Buffalo v. Downtown Dev., Inc.,*
448 F.3d 138 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S. Ct. 2174,
85 L. Ed. 2d 528 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Continental Casualty Co. v. Coastal Savings Bank*, 977 F.2d 734 (2d Cir. 1992) . . . . . . . . . . . . 8

*DaimlerChrysler Corp. v. Cuno*, 126 S. Ct. 1854, 164 L. Ed. 2d 589 (2006) . . . . . . . . . . . . . . . 8

*D'Amato v. Lichine USA Co.*, 1993 WL 437772 (S.D.N.Y. October 27, 1993) . . . . . . . . . . . . . 17

*Democratic Central Committee v. Washington Metropolitan Area*
*Transit Commission*, 941 F.2d 1217 (D.C. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*DiStefano v. Carozzi  N. Am., Inc.*, 286 F.3d 81 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Dow Jones v. Harrods Ltd.*, 346 F.3d 357 (2d Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Drew v. Plaza Const. Corp.*, 688 F.Supp.2d 270, 275 (S.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . 7

*E.R. Squibb & Sons, Inc.*, 241 F.3d 154 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*E-Z Bowz, L.L.C., v. Professional Product Research Co., Inc.*
2003 WL 22064259 (S.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Firestone v. Wiley*, 485 F.Supp.2d 694 (E.D.Va. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Gallop v. Cheney*, No. 08-cv-10881, 2010 WL 909203 (S.D.N.Y.
Mar. 15, 2010), *aff'd* 2011 U.S. App. LEXIS 8554 (2d Cir. NY April 27, 2011) . . . . . . . . . . . . 7

*Georgia Pacific Consumer Products, LP v. International Paper Co.,*
566 F.Supp.2d 246 (S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Guccione v. Harrah's Mktg. Services Corp.*, 06 CIV. 4361PKL, 2009 WL
2337995 (S.D.N.Y. July 29, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Gulf Crossing Pipeline Co., LLC v. 86.36 Acres of Land, More or Less,*
2008 WL 2465892 (W.D. La. June 18, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Harris v. Mills*, 572 F.3d 72 (2d Cir. 2009), *aff'd* 2011 U.S. App. LEXIS 8554
(2d Cir. NY April 27, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Hayden v. Paterson*, 594 F.3d 150 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.3d 55 (2d Cir.1985) . . . . . . . . . . . . . . . . . . . . 17

*House of Diamonds v. Borgioni, LLC*, 737 F. Supp. 2d 162 (S.D.N.Y. 2010) . . . . . . . . . . . . . 19

*In Re Metiom*, 2002 WL 433588 (S.D.N.Y. Feb. 25, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442 (2d Cir. 1998) . . . . . 20, 21

*Keene Corp. v. Insurance Co. of N. America*, 215 U.S. App. D.C. 156,
667 F.2d 1034, 1040 (D.C. Cir. 1981), *cert. denied*, 455 U.S. 1007,
71 L. Ed. 2d 875, 102 S. Ct. 1644, 102 S. Ct. 1645, *reh'g denied*,
456 U.S. 951, 102 S. Ct. 2023, 72 L. Ed. 2d 476 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Lefkowitz v. Bank of New York*, 676 F.Supp.2d 229 (S.D.N.Y. 2009). . . . . . . . . . . . . . . . . . . . . 7

*Lumberman's Mutual Casualty Co. v. Borden Co.*, 241 F.Supp. 683 (S.D.N.Y. 1965) . . . . . . . 10

*Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899 (2d Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . 16

*Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270,
61 S. Ct. 510, 85 L. Ed. 826 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*MedImmune, Inc.v. Genentech*, 549 U.S. 118, 127 S.Ct. 764,
166 L.Ed.2d 604 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*National Railroad Passenger Corp. v. Consolidated Rail Corp.*,
670 F. Supp. 424 (D.D.C. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Raila v. United States*, 355 F.3d 118 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Republic of Iraq v. Beaty*, 129 S.Ct. 2183 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Rubin v. Islamic Republic of Iran*, No. 08-2805,
2011 U.S. App. LEXIS 6394 (7th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Schur v. Porter*, 712 F. Supp. 1140 (S.D.N.Y. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Sills v. Ronald Reagan Presidential Found., Inc.*, 09 CIV. 1188 (GEL),
2009 WL 1490852 (S.D.N.Y. May 27, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Solow Bldg. Co. v. ATC Assocs. Inc.*, 388 F. Supp. 2d 136  (E.D.N.Y. 2005) . . . . . . . . . . . . . 11

*Southern New England Tel. Co. v. Global NAPS Networks, Inc.*,
624 F.3d 123 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Teva Pharmaceuticals USA, Inc. v. Novartis 2Pharmaceuticals Corp.*,
482 F.3d 1330 (D.C. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Wells Fargo Bank, N.A. v. Sharma*, 642 F.Supp.2d 242 (S.D.N.Y. 2009) . . . . . . . . . . . . . . . . . 8

*Whitaker v. American Telecasting, Inc.*, 261 F.3d 196 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . 16

*Yurman Designs, Inc. v. A.R. Morris Jewelers, L.L.C.*,
41 F. Supp. 2d 453 (S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## State Cases

*Bankers Trust Co. v. Equitable Life Assurance Society*,
22 A.D.2d 579, 257 N.Y.S.2d 502 (1ˢᵗ Dept. 1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.,*
7 N.Y.3d 65, 818 N.Y.S.2d 164 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19

*Ehrenfeld v. Bin Mahfouz,* 9 N.Y.3d 501, 881 N.E.2d 830 (2007) . . . . . . . . . . . . . . . . . . . . . . . 17

*Feuchtwanger v. Central Hanover Bank & Trust Co.,*
288 N.Y. 343, 43 N.E.2d 434 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Fischbarg v. Doucet,* 9 N.Y.3d 375, 849 N.Y.S.2d 501, 880 N.E.2d 22 (2007) . . . . . . . . . . 17, 19

*In Re Estate of Levine,* 154 Misc. 700, 278 N.Y.S.2d 36 (Surrogates
Ct. NY Co. 1935) *aff'd* 247 App. Div. 19, 286, N.Y.S. 513 (1st Dept. 1936) . . . . . . . . . . . . . . . 13

*Kreutter v. McFadden Oil Corp.,* 71 N.Y.2d 460, 527 N.Y.S.2d 195,
522 N.E.2d 40 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*McGowan v. Smith,* 52 N.Y.2d 268, 272, 419 N.E.2d 321 (1981) . . . . . . . . . . . . . . . . . . . . 17, 18
*McKee Elec. Co. v. Rauland-Borg Corp.,* 20 N.Y.2d 377,
283 N.Y.S.2d 34, 229 N.E.2d 604 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*McKennell v. Payne,* 197 App.Div. 340, 189 N.Y.S. 7 (2d Dept. 1921) . . . . . . . . . . . . . . . . . . . 14

*Morgan v. Drewry,* 285 App.Div. 1, 135 N.Y.S.2d 171 (1st Dept. 1954) . . . . . . . . . . . . . . . . . . 14

*Oishei v. Pennsylvania Railroad Co.,* 117 App.Div. 110, 102 N.Y.S. 368
(1st Dept. 1907) *aff'd* 191 N.Y. 544, 85 N.E. 1113 (1908) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Orsek v. Shemesh,* 243 A.D.2d 790, 662 N.Y.S.2d 622 (3rd Dept. 1997) . . . . . . . . . . . . . . . . . . 14

*Rodriguez v. New York*, 66 N.Y.2d 825, 498 N.Y.S.2d 351, 489 N.E.2d 238 (1985) . . . . . . . . . 20

*Wellman v. Lipkind,* 226 App.Div. 106, 234 N.Y.S. 661 (3rd Dept. 1929) . . . . . . . . . . . . . . . . . 13


**Federal Statutes**
U. S. Const. Art. III, § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8, 9, 10, 11

Fed. R. Civ. P. Rule 8(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Fed. R. Civ. P. Rule 12(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1391 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 22, 23

28 U.S.C. § 1655 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15


**State Statutes**

New York CPLR § 301 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

New York CPLR § 302 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 18

New York Judiciary Law § 475 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14


**Articles and Treatises**

"Commentary on the 1988 and 1990 Revisions of Section 1391" David D. Siegel . . . . . . . . . . 22

## PRELIMINARY STATEMENT

Plaintiff Jay Glenn ("Glenn") submits this Memorandum of Law in opposition to the Fed. R. Civ. P. Rule 12(b) motion to dismiss by defendants Thomas Fortune Fay, Steven Perles and their law firm Fay & Perles (collectively referred to herein as the "F&P Defendants"). Defendant Anthony LaSpada joined in the motion. Defendant Allan Louis Rothenberg apparently has not joined the motion.

Glenn is an attorney. He claims a charging lien against Iranian assets which were frozen in collection actions in this district, based on his representation of 104 individual plaintiffs in *Peterson v. Islamic Republic of Iran,* Case No. 01-cv-02094 (D.D.C.) (the "Peterson Liability Action"). He brought this declaratory judgment action only after the F&P Defendants disputed Glenn's right to payment for the legal services he rendered on behalf of these Plaintiffs.

The F&P Defendants argue that there is no Article III case or controversy -- and therefore no subject matter jurisdiction -- because Glenn's right to payment is "contingent" on the outcome of the pending efforts to collect the Peterson Liability Action judgment against Iran. This argument has no merit. Courts routinely decide legal disputes where the actual financial consequences of such disputes are "contingent" upon other events, including the resolution of related disputes. The presence of such contingencies does not strip this Court of Article III jurisdiction.

The F&P Defendants also argue that this Court does not have in rem jurisdiction to determine Glenn's interest in the frozen assets. This argument is not supported by any precedent and is contrary to the case law, which recognizes that an action to enforce an attorneys' charging lien is by definition an in rem action. If this Court has in rem jurisdiction to freeze Iranian assets

1

located in New York on behalf of the plaintiffs in the Peterson Liability Action (the "Peterson Plaintiffs"), then it has in rem jurisdiction to determine competing interests in such assets.

Since the Court has in rem jurisdiction over Iranian assets located in New York, personal jurisdiction over the F&P Defendants is irrelevant.  However, the F&P Defendants incorrectly argue that the Court lacks personal jurisdiction.  The F&P Defendants solicited many New York residents to participate in the Peterson Liability Action.  They represented approximately 40 New York residents in that action.  Through their agents, the F&P Defendants interviewed the New York Peterson Plaintiffs in New York, deposed these New York Peterson Plaintiffs in New York and conducted evidentiary hearings in New York for a Special Master.  The F&P Defendants have now hired the New York law firm of Salon Marrow Dyckman Newman & Broudy LLP ("SMD") to litigate at least three separate collection actions in New York[1] on behalf of all the plaintiffs (the "Peterson Plaintiffs") in the Peterson Liability Action.  The F&P Defendants have a substantial interest in these New York proceedings:  if their New York collection counsel is successful, the F&P Defendants will personally collect several hundred million dollars from assets located in New York.  Complaint ("Cmpt.") ¶ 40.  Glenn Declaration ("Dec.") ¶ 6, 7.

Under such circumstances, the F&P Defendants should not be heard to complain about being haled into this Court to determine their respective interests to assets located in this district.[2]

The F&P Defendants also argue that the case should be dismissed on its merits because Glenn has no charging lien under District of Columbia law.  They contend that "associated

---

[1] The three collection actions in this district are (1) Levin, et al., v. Bank of New York, et al., 09-cv-5900 (RPP)(S.D.N.Y.); (2) Peterson, et al., v. Islamic Republic of Iran, et al., 18 Mis 302(BSJ)(S.D.N.Y.); and (3) Peterson, et al., v. 650 Fifth Avenue Company, et al. 10-cv-01627 (RJH)(S.D.N.Y.).  Cmpt. ¶ 38.

[2] Defendant Allen Rothenberg maintains a law office in New York and is clearly subject to personal jurisdiction in New York.  Defendant Anthony LaSpada is apparently not subject to personal jurisdiction in New York but is subject to in rem jurisdiction.  Cmpt. ¶¶ 11, 12.

2

counsel" cannot have a charging lien, and the charging lien is only properly asserted against the clients, not against other attorneys. This argument mischaracterizes both the nature of Glenn's claims and his status as counsel for 104 of the Peterson Plaintiffs in proceedings before a Special Master to determine damages. Each of the Peterson Plaintiffs represented by Glenn knew of and consented to his representation. Glenn Dec. ¶ 8.

Moreover, Glenn is not asserting a charging lien against assets which come into the possession of the F&P Defendants – he has an interest in the proceeds of the collection actions in New York, as asserted in his complaint. Indeed, his written agreement provides that he is to receive "3% of the gross amount collected from the Defendants with respect to compensatory damages . . ." Cmpt. ¶ 25. This is an interest in the entire fund being collected for the Peterson Plaintiffs. This action is brought against the F&P Defendants because in their capacity as lead counsel for the Peterson Plaintiffs they will likely have ultimate responsibility for receiving and disbursing any funds collected on the Peterson Liability Action, and they have already told Glenn that he would not be paid in full. Glenn Dec. ¶ 14.

The F&P Defendants also argue that this Court lacks venue. This argument ignores the clear import of 28 U.S.C. § 1391, which provides that venue is proper in "a judicial district in which . . . a substantial part of the property that is the subject of the action is situated." Venue is proper in this District because the frozen Iranian bank accounts and real estate which are the subject of this in rem proceeding are located in this District.

## STATEMENT OF FACTS

On October 23, 1983, terrorists trained and funded by Iran bombed the United States Marine Barracks in Beirut, Lebanon, killing 241 United States Servicemen and women and wounding many others. Cmpt. ¶ 19.

In or about 2000, the F&P Defendants purchased advertising in nationwide publications directed to military personnel and their families, to recruit victims of terrorism for a lawsuit against Iran. On hearing of the F&P Defendants' plans to sue Iran, many victims of Iranian state sponsored terrorism – including approximately 40 New York residents – hired the F&P to bring the Peterson Liability Action against Iran. Glenn Dec. ¶ 4.

In or about 2002, the F&P Defendants asked Glenn to prove damages on behalf of 64 of the Peterson Plaintiffs, pursuant to a written agreement which stated that Glenn was to receive Three Percent (3%) of any "gross recovery" by those Peterson Plaintiffs that he represented. Cmpt. ¶¶ 24, 25.

Shortly thereafter, Glenn discovered that the F&P Defendants had improperly excluded from the Peterson Liability Action many family members of Marines killed in the bombing. Glenn offered to locate and bring claims on behalf of such additional plaintiffs provided that the F&P Defendants would pay him a standard contingent referral fee equal to 11.11% of the recovery for any new plaintiffs that he signed up for the Peterson Liability Action. The F&P Defendants agreed to this. Cmpt. ¶¶ 26, 48, 49, 52 to 224.

Starting in or about early 2003, Glenn signed up an additional forty (40) plaintiffs for the Peterson Liability Action. The retainer agreements signed by these 40 plaintiffs were each signed (1) by the new Peterson Plaintiff, (2) by Glenn in his capacity as agent for the Fay & Perles law firm, and (3) by Glenn in his personal capacity. Glenn was responsible for proving damages on behalf of all of these additional Peterson Plaintiffs. Cmpt. ¶¶ 52-24.

From 2003 to 2006, Glenn prepared evidentiary submissions and attended hearings before a Special Master, to prove the damages suffered by each of his 104 Peterson Plaintiffs. Between July 26, 2005 and September 12, 2006, the Special Master issued fourteen (14) separate

4

reports on damages suffered by Glenn's 104 Peterson Plaintiffs. Each time Glenn received a report from the Special Master, he transmitted the report to the F&P Defendants, together with a cover letter setting forth his analysis of the payments to be made. Glenn's letters set forth a detailed provisional calculation of how the provisional awards would be disbursed, which included both his Three Percent (3%) contingent fee for proving damages plus his 11.11% contingent referral fee, where appropriate. The F&P Defendants hired other attorneys to prove damages on behalf of other Peterson Plaintiffs. Cmpt. ¶¶ 52-224.

The F&P Defendants hired New York attorneys to conduct interviews and depositions in New York of New York residents who had joined the Peterson Liability Action. In addition, the F&P Defendants, through their New York agents, prepared and presented damages evidence for New York residents in New York. That evidence was then submitted to a Special Master. Glenn Dec. ¶ 5.

From 2002 to 2008 Glenn consulted with the F&P Defendants on a continuous basis concerning the status of Glenn's investigations, interviews and new documentary evidence. Occasionally Defendant Fay traveled with Glenn for hearings before the Special Master and other proceedings. During the above 6 year period, Glenn and the F&P Defendants had many conversations dealing with the Peterson Plaintiffs. The F&P Defendants never questioned Glenn's right to payment in any of these conversations. Glenn Dec. ¶ 2.

On September 7, 2007, Judge Royce C. Lamberth awarded a $2,656,944,877.00 judgment for the Peterson Plaintiffs, which included $309,741,881.00 for the 104 Peterson Plaintiffs Glenn represented in the damages phase of the Peterson Liability Action. Cmpt. ¶ 27.

After judgment was rendered in the Peterson Liability Action, the F&P Defendants located Iranian assets in New York, and hired the New York law firm of SMD to commence

collection proceedings in the Southern District of New York (the "Peterson Collection Actions").
On information and belief, Iranian cash and assets worth more than Two Billion Dollars
($2,000,000,000.00) have been frozen in the Peterson Collection Actions, and the Peterson
Plaintiffs – along with Glenn and the F&P Defendants – are waiting for a turnover order in those
actions.  The frozen assets are all located in this District.  Cmpt. ¶¶ 28, 227.

In addition to pursuing collection of the Peterson Liability Action judgment in New York,
the F&P Defendants – through New York counsel that they retained – brought other actions in
New York on behalf of other clients that they represented.  The F&P Defendants represented the
plaintiffs in Bonk et al. v. Islamic Republic of Iran, 08-cv-1273 (RCL) (D.D.C.), Valore, et al. v.
Islamic Republic of Iran, 03-cv-1959 (RCL)(D.D.C.), Estate of Silva and Spencer et al v. Islamic
Republic of Iran 06-cv-750 (RCL)(D.D.C.) and Estate of Bland, et al, 05-cv02124
(RCL)(D.D.C.).  After judgments were entered in these cases, the F&P Defendants undertook
collection actions in New York.  Glenn Dec. ¶¶ 6, 7.

In March, 2010, the F&P Defendants told Glenn that they did not recognize his right to
the full amount of the attorneys fees which he had earned, and which the F&P Defendants –
acting as agents for the Peterson Plaintiffs – had agreed to pay Glenn.  Cmpt. ¶ 229.

**ARGUMENT**

### POINT I
### THE LIBERAL PLEADING REQUIREMENTS
### OF FED. R. CIV. P. RULE 8(a)

Pursuant to Fed. Civ. P. Rule 8(a) a complaint need only contain "a short and plain
statement of the claim showing that the pleader is entitled to relief."  In *Bell Atlantic Corp. v.
Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), the Supreme Court
held that a complaint which is "plausible" must be sustained.  *Accord, Arar v. Ashcroft*, 585 F.3d

559, 569 (2d Cir. 2009) ("on a motion to dismiss, courts require enough facts to state a claim to relief that is plausible on its face").

A complaint need not establish probability of entitlement to relief – only plausibility. *Hayden v. Paterson,* 594 F.3d 150, 161 (2d Cir. 2010); *Harris v. Mills,* 572 F.3d 72 (2d Cir. 2009), *aff'd* 2011 U.S. App. LEXIS 8554 (2d Cir. NY April 27, 2011). Determining whether a plaintiff's entitlement to relief is "plausible" is a "context- specific task that requires the reviewing court to draw on its judicial experience and common sense." *Gallop v. Cheney,* No. 08-cv-10881, 2010 WL 909203, at *3 (S.D.N.Y. Mar. 15, 2010), *aff'd* 2011 U.S. App. LEXIS 8554 (2d Cir. NY April 27, 2011). *Accord, Harris v. Mills, supra.*

The Court must credit the facts alleged in the Complaint and draw all reasonable inferences in Glenn's favor. *Bldg. & Constr. Trades Council of Buffalo v. Downtown Dev., Inc.,* 448 F.3d 138, 144 (2d Cir. 2006). Glenn's complaint should only be dismissed if he cannot possibly prove facts entitling him to relief. *Raila v. United States,* 355 F.3d 118, 119 (2d Cir. 2004). Thus, *Twombly* and *Iqbal* do not require a plaintiff to establish a *prima facie* case in the complaint. *See, e.g., Drew v. Plaza Const. Corp.,* 688 F.Supp.2d 270, 275 (S.D.N.Y. 2010) (a plaintiff "need not [plead] specific facts establishing a *prima facie* case . . . rather [the] complaint must include only a short and plain statement of the claim" which gives defendants "fair notice of what the plaintiff's claim is and the grounds upon which it rests."

*Twombly* and *Iqbal* do not convert federal courts into fact pleading tribunals. The Courts do not "requir[e] heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Drew* at 688 F.Supp.2d. at 275*, (citing Twombly,* 550 U.S. at 547). *See also, Lefkowitz v. Bank of New York,* 676 F.Supp.2d 229 (S.D.N.Y. 2009).

7

## POINT II
## THIS CASE PRESENTS AN "ACTUAL CASE OR
## CONTROVERSY" UNDER U.S. CONST. ART. III § 2

The F&P Defendants argue incorrectly that this lawsuit is not a "case or controversy"

within the meaning of U.S. Const. Art. III, because the financial value of Glenn's claim is

dependent on the Peterson Plaintiffs' success in collecting their judgment against Iran.

Article III § 2 of the United States Constitution limits the jurisdiction of the United States

Courts to "actual cases or controversies." *DaimlerChrysler Corp. v. Cuno,* 126 S. Ct. 1854,

1860-61, 164 L. Ed. 2d 589 (2006). Glenn's complaint raises an "actual case or controversy" for

Article III purposes if "the facts alleged, under all the circumstances, show that there is a

substantial controversy, between parties having adverse legal interests, of sufficient immediacy

and reality to warrant" the relief sought. *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312

U.S. 270, 273, 61 S. Ct. 510, 85 L. Ed. 826 (1941). *Accord, Wells Fargo Bank, N.A. v. Sharma,*

642 F.Supp.2d 242 (S.D.N.Y. 2009).

In *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth,* 300 U.S. 227, 240, 57 S.Ct. 461,

463, 81 L.Ed. 617 (1937), the Supreme Court articulated its test to determine whether a case

presents an "actual controversy."

> 'A 'controversy' in this sense must be one that is appropriate for judicial
> determination. . . . A justiciable controversy is thus distinguished from a
> difference or dispute of a hypothetical or abstract character; from one that is
> academic or moot. . . .

The Second Circuit has held that an Article III case or controversy exists "(1) when the

judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or (2)

when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving

rise to the proceeding." *Continental Casualty Co. v. Coastal Savings Bank,* 977 F.2d 734, 737

(2d Cir. 1992), citing *Broadview Chem. Corp. v. Loctite Corp.,* 417 F.2d 998, 1001 (2d Cir.

1969), *cert. denied,* 397 U.S. 1064, 25 L. Ed. 2d 686, 90 S. Ct. 1502 (1970)). *Accord, Dow Jones v. Harrods Ltd.,* 346 F.3d 357 (2d Cir. 2003).

In *MedImmune, Inc.v. Genentech,* 549 U.S. 118, 127, 127 S.Ct. 764, 771, 166 L.Ed.2d 604, 614-15 (2007) the Supreme Court held that instead of drawing a "bright line" to determine whether a declaratory judgment action satisfied the case-or-controversy requirement, Courts should ensure that the disputes before them were "definite and concrete, touching the legal relations of the parties having adverse legal interests"; and that it be "real and substantial" and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."

This case presents "a substantial controversy, between parties having adverse legal interests . . ." as to Glenn's interest in the Iranian assets located in this district. Glenn's Complaint alleges that the F&P Defendants told him that he is not entitled to collect on his full attorneys' charging lien. The declaratory judgment sought by Glenn will redress Glenn's injury and resolve all issues between the parties: there is nothing "hypothetical" about the issue before the Court.

The F&P Defendants argue incorrectly that this case is not "ripe" enough to be an Article III case or controversy, because the Peterson Plaintiffs have not yet collected on their judgment.

"The doctrine of ripeness focuses on the conduct of the defendant to determine whether the defendant's actions have harmed, are harming, or are about to harm the plaintiff. Ripeness can be an issue in obtaining anticipatory relief like declaratory judgments." *Teva Pharmaceuticals USA, Inc. v. Novartis 2Pharmaceuticals Corp.,* 482 F.3d 1330, 1337 (D.C. Cir. 2007). *Teva* held that a "controversy" is "ripe" if the question presented is "fit for judicial review," meaning it is entirely or substantially a question of law and postponing a decision

9

would work a substantial hardship on the challenging party. *See generally, Abbott Labs v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

Contrary to the F&P Defendants' argument, an Article III case or controversy may be present even where future contingencies might affect the parties' legal rights and obligations. In *National Railroad Passenger Corp. v. Consolidated Rail Corp.*, 670 F. Supp. 424, 428 (D.D.C. 1987) Amtrak sued for a declaratory judgment that its agreement to indemnify Conrail for an accident was void as against public policy. The victims of a train crash had sued Conrail for personal injuries and wrongful deaths. Conrail argued that unless and until these lawsuits were resolved against it, Amtrak's injury was too hypothetical, and its declaratory judgment action did not state an Article III case or controversy. The court disagreed. It held

> ". . . Amtrak's suit does not confront the Court with a hypothetical set of facts. Injured passengers have filed suit against Conrail based on theories of gross negligence and including claims for punitive damages. Conrail has demanded that Amtrak indemnify it as to those claims. Amtrak has refused, alleging that public policy precludes indemnification for such claims. The pending lawsuits naming Conrail as a defendant are not hypothetical. In each of these cases, there is some likelihood that Conrail will be found grossly negligent or that punitive damages will be awarded. Accordingly, there is a "real and substantial" possibility that Amtrak will be called upon to indemnify Conrail for such claims."

Similarly, in *Lumberman's Mutual Casualty Co. v. Borden Co.* 241 F.Supp. 683, 690 (S.D.N.Y. 1965), plaintiff insurance company sued for a declaratory judgment as to the respective obligations of various casualty insurers for damages suffered by their insured. The other insurers – like the F&P Defendants in this case -- "argued that the plaintiff might not be liable to its insured at all, and that, accordingly, the matter in controversy . . . is contingent upon the happening of other events which may or may not happen and is not appropriate for judicial intervention as of this point." This Court disagreed. It held that even though plaintiffs' right to recover was contingent upon external events, there was nevertheless an actual case or

controversy, capable of resolution under U.S. Const. Art. III § 2. *Accord, Georgia Pacific Consumer Products, LP v. International Paper Co.,* 566 F.Supp.2d 246 (S.D.N.Y. 2008) (holding that declaratory judgment action on indemnification agreement was ripe even though obligation to indemnify was contingent on future events). *See generally, E.R. Squibb & Sons, Inc.,* 241 F.3d 154, 177 (2d Cir. 2001); *Solow Bldg. Co. v. ATC Assocs. Inc.,* 388 F. Supp. 2d 136, 139  (E.D.N.Y. 2005); *Keene Corp. v. Insurance Co. of N. America,* 215 U.S. App. D.C. 156, 667 F.2d 1034, 1040 (D.C. Cir. 1981), *cert. denied,* 455 U.S. 1007, 71 L. Ed. 2d 875, 102 S. Ct. 1644, 102 S. Ct. 1645, *reh'g denied,* 456 U.S. 951, 102 S. Ct. 2023, 72 L. Ed. 2d 476 (1982) (holding that the interpretation of a party's rights under a contract "presents a 'real and substantial controversy'" even though the financial consequences of the Court's holding was contingent on the other lawsuits.)

In *In Re Metiom,* 2002 WL 433588 at *3 (S.D.N.Y. Feb. 25, 2002), the debtor on a promissory note raised an Article III defense similar to that asserted by the F&P Defendants. The debtor argued that because the note was not yet due, plaintiff's action for a declaratory judgment on the note was "premature." The Court found that the debtor's ". . . denial of liability under the Note creates a present, actual controversy." Similarly, in this case the F&P Defendants' position as to Glenn's right to payment creates a present, actual controversy.

The F&P Defendants' reliance on *AgribankFCB v. Cupples,* 850 F.Supp. 780, 782 (E.D. Ark. 1993) is misplaced. In *Agribank* the Court held that "the contingent nature of the right or obligation in controversy will not bar a litigant from seeking declaratory relief when the circumstances reveal a need for a present adjudication." In *Agribank,* the Court "declare[d] there to be a lien on [defendant's choses in action] subject to execution . . ." but refused to determine which of several competing liens had priority. In this case, Glenn is asking the Court for a

11

declaration that he has a lien on assets collected in the Peterson Collection Action – he is not asking the Court for a determination as to the priority of various liens. Indeed, nobody has asserted a competing lien – the F&P Defendants have merely argued that Glenn has no such lien.

The F&P Defendants also improperly rely on *Firestone v. Wiley,* 485 F.Supp.2d 694, 700 (E.D.Va. 2007). In *Firestone* the Court dismissed a declaratory judgment action because "(i)[the] corporate dissolution has not been approved by the shareholders, (ii) [the corporation's] assets are not currently being distributed to shareholders, and (iii) on this record there is no reason to believe that [the corporation's] liability to plaintiff, if any, will exceed its assets." By contrast, in this case (1) a final, non-appealable judgment has been entered against Iran, (2) Iranian assets in this district have been frozen; and (3) those assets will presumably be distributed once a final turnover order is issued. The contingency in this case – collection against Iran – is not a purely hypothetical future possibility, but rather is a likely outcome of events now well under way.

Although the F&P Defendants incorrectly cite *Republic of Iraq v. Beaty,* 129 S.Ct. 2183 (2009) and *Rubin v. Islamic Republic of Iran,* No. 08-2805, 2011 U.S. App. LEXIS 6394 (7th Cir. 2009)[3] for their contention (Brief p. 13) that "it remains highly uncertain whether the <u>Peterson</u> Plaintiffs will collect any of the assets under attachment in this district" the Court is actually required to draw all reasonable inferences in favor of Glenn on the instant motion to dismiss – including the inference that the Peterson Plaintiffs will succeed in their collection actions against

---

[3]     *Republic of Iraq v. Beaty,* 129 S.Ct. 2183 (2009) and *Rubin v. Islamic Republic of Iran,* No. 08-2805, 2011 U.S. App. LEXIS 6394 (7th Cir. 2009) are both inapposite. In *Beaty,* the President of the United States removed Iraq from the list of state sponsors of terrorism – and thereby restored its sovereign immunity from suit -- after the United States invaded Iraq. There is no reason to believe that Iran will have its sovereign immunity restored in United States courts any time soon. *Rubin* held that general asset discovery of Iranian assets was not permitted. However, this case involves specific assets which (1) have been identified as Iranian assets, (2) are now frozen by an order of this Court, and (3) are now awaiting a turnover order.

Iran in a reasonable time frame.  In point of fact, it appears that in Greenbaum, et al., v. Islamic

Republic of Iran, 02-cv-2148 and Acosta, et al. v. Islamic Republic of Iran, et al., 06-cv-745,

several plaintiffs represented by Defendant Rothenberg have now received a partial final

judgment against Iranian assets, and that Defendant Rothenberg and his clients in these cases

will collect from Iran, while Rothenberg's and the F&P Defendants' clients in the Peterson

Liability Action sit waiting for collection.

## POINT III
## THE COURT HAS IN REM JURISDICTION OVER THE
## ASSETS WHICH ARE THE SUBJECT OF THIS ACTION

As a matter of law, "a proceeding to enforce an attorney's lien is a proceeding in rem."

Consequently, "Jurisdiction over the fund against which the lien is sought to be enforced

empowers the court to entertain the proceeding to enforce the lien." *In Re Estate of Levine,* 154

Misc. 700, 702, 278 N.Y.S.2d 36, 39 (Surrogates Ct. NY Co. 1935) *aff'd* 247 App. Div. 19, 286,

N.Y.S. 513 (1st Dept. 1936).  *Accord, Oishei v. Pennsylvania Railroad Co.,* 117 App.Div. 110,

102 N.Y.S. 368 (1st Dept. 1907) *aff'd* 191 N.Y. 544, 85 N.E. 1113 (1908); *Wellman v. Lipkind,*

226 App.Div. 106, 234 N.Y.S. 661 (3rd Dept. 1929).

This Court has in rem "jurisdiction over the fund against which the lien is sought to be

enforced."  Accounts in New York banks constitute specific personal property within the state

for purposes of in rem jurisdiction.  *Feuchtwanger v. Central Hanover Bank & Trust Co.,* 288

N.Y. 343, 43 N.E.2d 434 (1942); *Bankers Trust Co. v. Equitable Life Assurance Society,* 22

A.D.2d 579, 257 N.Y.S.2d 502 (1st Dept. 1965).  Indeed, the F&P Defendants have recognized

this Court's jurisdiction over Iranian assets in New York by retaining SMD to collect the Iranian

assets located in New York.  The pending collection actions, like the case at bar, invoke this

13

Court's in rem jurisdiction to determine the respective interests of the Peterson Plaintiffs and other parties to funds located in this district.

The Court also clearly has jurisdiction over the real property located at 650 Fifth Avenue in New York City, which property is the subject matter of collection proceedings in New York, by the agents of the F&P Defendants.

Although Glenn's lien arose for legal work done outside New York, Judiciary Law § 475 protects the liens of attorneys even where the underlying action which gave rise to the lien took place in another jurisdiction. In *Orsek v. Shemesh,* 243 A.D.2d 790, 791, 662 N.Y.S.2d 622, 624 (3rd Dept. 1997) the Third Department held:

> "There is no requirement under Judiciary Law § 475 that the underlying action which generated the fees must have been commenced in a court of this State in order to be the subject of a charging lien. Rather, the statute itself speaks in terms of an action 'in any court.' Charging liens have been imposed under the statute for recoveries arising out of actions in out-of-State and Federal courts."

In *McKennell v. Payne,* 197 App.Div. 340, 345, 189 N.Y.S. 7, 10 (2d Dept. 1921) an attorney sued in New York Supreme Court to enforce a charging lien from a lawsuit in the United States District Court in New Jersey, on behalf of a New Jersey resident. The client argued that the New York courts lacked jurisdiction over her. The Court, however, determined that there was a settlement fund in New York, and further determined that "it can make no difference that the right to the lien herein arises under the New Jersey statute instead of under our own . . . The controlling point is that the fund upon which the lien is asserted appears in the eye of the law to be here . . .." *Accord, Morgan v. Drewry,* 285 App.Div. 1, 5, 135 N.Y.S.2d 171, 176 (1st Dept. 1954) (holding that unless liens created in other jurisdictions could be enforced against New York assets under Judiciary Law § 475, New York ". . . would be granting a special immunity to nonresident litigants, a doctrine to which our courts could not subscribe.").

The F&P Defendants argue that in rem jurisdiction does not obtain because "the relief [Glenn] seeks is actually exclusively *in personam* in nature." This is nonsense. Glenn seeks the same relief as the attorneys in *Levine, Orsek, McKennell* and *Morgan*. As a matter of law, his action for determination of his lien against assets located in New York is an *in rem* action.

The F&P Defendants also argue (Brief p. 12) that there can be no in rem jurisdiction because Glenn "failed to follow the 'warning order' procedure explicitly required by [28 U.S.C. § 1655]." That "warning order" is only required by the statute "where any defendant . . . does not voluntarily appear" in the action. Here, Defendant Perles voluntarily filed his notice of appearance on December 2, 2010 (Docket Report No. 3) and Defendants Fay and Fay & Perles voluntarily filed their appearance on December 3, 2010 (Docket Report No. 5).

**POINT IV**
**THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS**

Once the Court has in rem jurisdiction, personal jurisdiction becomes irrelevant. The Court can resolve competing demands on the Iranian assets located in New York even if it has no personal jurisdiction over the F&P Defendants.

However, the Court does have personal jurisdiction over the F&P Defendants. On the F&P Defendants' motion to dismiss the Court should consider and credit Glenn's accompanying declaration in which he testifies that the F&P Defendants (1) solicited New York residents to join the Peterson Liability Action, (2) represented New York residents in the Peterson Liability Action; (3) personally or through agents conducted interviews, depositions and hearings in New York in connection with the Peterson Liability Action; (4) retained the New York law firm of SMD to pursue collection actions in New York; and (5) through their agents in New York, brought collection actions in New York on the judgments in Bonk et al. v. Islamic Republic of Iran, 08-cv-1273 (RCL) (D.D.C.), Valore, et al. v. Islamic Republic of Iran, 03-cv-1959

15

(RCL)(D.D.C.), Estate of Silva and Spencer et al v. Islamic Republic of Iran 06-cv-750

(RCL)(D.D.C.) and Estate of Bland, et al, 05-cv02124 (RCL)(D.D.C.). *Whitaker v. American*

*Telecasting, Inc.* 261 F.3d 196, 208 (2d Cir. 2001) (holding that a plaintiff "can make this

showing [of personal jurisdiction] through [his] own affidavits and supporting materials

containing an averment of fact that, if credited . . . would suffice to establish jurisdiction over the

defendant"); *Southern New England Tel. Co. v. Global NAPS Networks, Inc.,* 624 F.3d 123, 138

(2d Cir. 2010) (similar holding).

Glenn need only make a prima facie showing of personal jurisdiction over the F&P

Defendants. *DiStefano v. Carozzi N. Am., Inc.,* 286 F.3d 81, 84 (2d Cir. 2001); *Marine Midland*

*Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir. 1981); *Sills v. Ronald Reagan Presidential*

*Found., Inc.,* 09 CIV. 1188 (GEL), 2009 WL 1490852 (S.D.N.Y. May 27, 2009). All doubts as

to personal jurisdiction must be resolved in Glenn's favor.

A federal court sitting in diversity applies the personal jurisdiction rules of the forum

state – in this case, New York. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171

F.3d 779, 784 (2d Cir.1999); *Guccione v. Harrah's Mktg. Services Corp.,* 06 CIV. 4361PKL,

2009 WL 2337995 (S.D.N.Y. July 29, 2009); *Sill, supra.* If jurisdiction is proper under New

York law, the Court must determine whether the assertion of personal jurisdiction comports with

federal due process. *Bank Brussels Lambert, Sill, supra.*

New York's long arm statute, CPLR § 302, provides for personal jurisdiction over a non-

domiciliary based on the transaction of business within the state as follows:

> (a)  Acts which are the basis of jurisdiction. As to a cause of action arising
> from any of the acts enumerated in this section, a court may exercise
> personal jurisdiction over any non-domiciliary, or his executor or
> administrator, who in person or through an agent:

> 1.   transacts any business within the state or contracts anywhere to
>       supply goods or services in the state; . . . .

The showing required to demonstrate jurisdiction under New York CPLR Rule 302(a)(1)

is considerably less than is necessary to demonstrate that a defendant is "doing business" in New

York in a systematic and continuous way so as to be subjected to Rule 301 general jurisdiction.

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.3d 55, 58 (2d Cir.1985).   Rule 302(a)(1)

jurisdiction requires only a minimal quantity of activity, as long as defendant's activities in New

York were purposeful and there is a substantial relationship between the transaction and the

claim asserted.   *Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.,* 7 N.Y.3d 65, 71, 818 N.Y.S.2d

164, 850 N.E.2d 1140 (2006), cert. denied 549 U.S. 1095, 127 S.Ct. 832, 166 L.Ed.2d 665;

*Fischbarg v. Doucet,* 9 N.Y.3d 375, 380, 849 N.Y.S.2d 501, 880 N.E.2d 22 (2007).   The

overriding criterion to establish a transaction of business is some act by which the defendant

purposefully avails itself of the privilege of conducting activities in New York, invoking the

benefits and protections of New York's laws. *McKee Elec. Co. v. Rauland-Borg Corp.,* 20

N.Y.2d 377, 382, 283 N.Y.S.2d 34, 229 N.E.2d 604 (1967); *Deutsche Bank Sec., supra*;

*Ehrenfeld v. Bin Mahfouz,* 9 N.Y.3d 501, 508, 881 N.E.2d 830, 834-35 (2007).

The necessary activity may be conducted through an agent, even if there is no formal

agency relationship, as long as the agent acted for the benefit of, and with the knowledge and

consent of the non-resident principal.   *Alto Products Corp. v. Ratek Industries Ltd.,* 1996 WL

497027 at 3 (S.D.N.Y. September 3, 1996); *D'Amato v. Lichine USA Co.,* 1993 WL 437772 at *1

(S.D.N.Y. October *27, 1993); Yurman Designs, Inc. v. A.R. Morris Jewelers, L.L.C.,* 41 F. Supp.

2d 453, 459 (S.D.N.Y. 1999); *Deutsche Bank Sec.,supra.*

A claim "arises from" a particular transaction when there is "some articulable nexus

between the business transacted and the cause of action sued upon," *McGowan v. Smith*, 52

17

N.Y.2d 268, 272, 419 N.E.2d 321, 323 (1981) or when "there is a substantial relationship

between the transaction and the claim asserted," *Kreutter v. McFadden Oil Corp.,* 71 N.Y.2d

460, 467, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988). Due process is not offended if a party avails

itself of the benefits of the forum, has sufficient minimum contacts with it, and should

reasonably expect to defend its actions there, even if not present in that State. *Burger King Corp.*

*v. Rudzewicz,* 471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985); *Deutsche Bank Securities,*

*Inc. supra.*

Here, the court may properly assert personal jurisdiction over the F&P Defendants based

on these standards. By soliciting New York residents to join their lawsuit, representing New

York residents, conducting interviews, depositions and hearings in New York and hiring the

New York law firm of SMD to pursue collection actions in New York, the F&P Defendants

purposely availed themselves of the privilege of transacting business in New York and took

advantage of New York's laws. *See, Schur v. Porter,* 712 F. Supp. 1140, 1144-45 (S.D.N.Y.

1989). The F&P Defendants stand to make hundreds of millions of dollars by virtue of their

activities in New York. Their argument that they should not be subject to personal jurisdiction in

New York defies all common sense notions of fairness and personal jurisdiction.

The holding in *Fischbarg v. Doucet, supra* is instructive. In *Fischbarg,* the New York

Court of Appeals held that New York had personal jurisdiction under CPLR 302(a)(1) in a

dispute involving a retainer agreement between California clients and a New York attorney who

they retained to handle a matter in Oregon federal court. The Court held that by retaining a New

York attorney and communicating with him regularly in New York State, defendants had

transacted substantial business in New York in which they took advantage of the laws involving

attorney-client relationships. This was sufficient to comply with the minimum contact

requirements of due process. See also: *Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.,* 7

N.Y.3d 65, 71-72, 818 N.Y.S.2d 164, 850 N.E.2d 1140 (2006) (Court holds that an institutional

investor who negotiated and executed a series of investments in New York via electronic

messaging transacted business in New York); *House of Diamonds v. Borgioni, LLC*, 737 F.

Supp. 2d 162, 166-67 (S.D.N.Y. 2010)(there was personal jurisdiction over a diamond consignee

based on its transaction of business in New York through continuous communications with New

York consignor, agreeing under the terms of consignment memoranda to receive goods and

services in New York and benefitting from New York laws by such transactions).

 The F&P Defendants' reliance on cases holding that a Court does not have personal

jurisdiction over an attorney who appears pro hac vice in the jurisdiction is misplaced. To begin,

the only case cited involving New York law, *E-Z Bowz, L.L.C., v. Professional Product

Research Co., Inc. 2003 WL 22064259 (S.D.N.Y. 2010)* was decided before the Court of Appeals

ruling in *Fischbarg, supra.* Moreover, *E-Z Bowz* is easily distinguished by the holding in *Shur v.

Porter, supra.* In *E-Z Bowz,* the attorney did absolutely nothing in New York prior to appearing

pro hac vice. By contrast, the F&P Defendants have extensive contacts with New York.

 In *Schur v. Porter, supra*, the Court held that it had jurisdiction over a foreign lawyer

under the New York long arm statute because the attorney negotiated and drafted partnership

agreements in New York. Here, the F&P Defendants represented New York clients in the

Peterson Liability Action and performed services in New York. This is a basis for personal

jurisdiction in New York.

**POINT V**
**GLENN'S CLAIM SHOULD NOT BE DISMISSED ON THE MERITS**

 The F&P Defendants argue that Glenn has failed to state a claim for relief because, as a

matter of District of Columbia law, Glenn has no charging lien. According to the F&P

19

Defendants, Glenn cannot assert an attorney charging lien because he was only "associated counsel" (Brief p. 3) and not an attorney of record and because he is asserting his charging lien "against his fellow counsel" rather than against the Peterson Plaintiffs.

The District of Columbia and New York both recognize that only an "attorney of record" may have a charging lien against proceeds of a litigation. *See, e.g., Democratic Central Committee v. Washington Metropolitan Area Transit Commission,* 941 F.2d 1217 (D.C. Cir. 1991); *Rodriguez v. New York,* 66 N.Y.2d 825, 498 N.Y.S.2d 351, 489 N.E.2d 238 (1985).

The District of Columbia Courts have apparently never defined the circumstances which make an attorney the attorney of record for purposes of asserting a charging lien.  By contrast, New York courts have addressed this issue repeatedly.

In *Itar-Tass Russian News Agency v. Russian Kurier, Inc.,* 140 F.3d 442 (2d Cir. 1998), an attorney who was "of counsel" to the attorney of record for plaintiff – and who had no retainer agreement with the client -- sought to determine his right to a charging lien.  In response to the argument that the attorney could not assert such a lien because he was not the "attorney of record" the Court found that it was "not troubled . . . by the parties' use of the term 'of counsel' as a further description of their relationship."  The Court then considered three factors related to whether the "of counsel" was actually a counsel of record entitled to file a charging lien.

First, the Court noted that the "of counsel" attorney "signed and submitted numerous papers and letters to the Court and appeared at trial, as 'attorney for the plaintiffs.'"  Second, the Court noted that "There is no indication anywhere in the record that [the purportedly 'of counsel' attorney] was treated by the Clerk of the Court, the Magistrate Judge or the District Court Judge as anything other than an attorney of record for plaintiffs."  Finally, the *Itar-Tass* Court noted that "Nothing in the record suggests that [the attorney] acted simply as an advisor or as a law

20

clerk to Lowenfeld, or that he merely assisted [the attorney of record] in the case's preparation. . . . there is no doubt that he entered the case, allegedly with the plaintiffs' consent, to serve as co-counsel . . .."

Each of these three factors militate in favor of allowing Glenn to file an attorneys' lien in this case. Like counsel in *Itar-Tass,* Glenn was not a passive participant in litigation. He appeared at the liability phase of the Peterson Liability Action, he appeared as counsel of record before the Special Master, and in this capacity he signed and submitted numerous pleadings and other documents to the Special Master in the damages phase of the Peterson Liability Action. As in *Itar-Tass,* there is "no indication anywhere in the record that [Glenn] was treated by the [Special Master responsible for determining damages] as anything other than an attorney of record" for the Peterson Plaintiffs. Finally, Glenn did not "merely assist" the F&P Defendants in preparation of papers: once the District Court ordered the F&P Defendants to prove the damages suffered by the Peterson Plaintiffs, "[Glenn] entered the case . . . to serve as co-counsel . . .."

The F&P Defendants' reliance on *Democratic Central Committee* is misplaced for several reasons. First, in that case an associated counsel had an agreement to receive a set amount of money from an award of attorneys fees to counsel of record – the attorney had no contractual right to receive an award from the settlement fund itself. By contrast, Glenn's written agreement provides that he will receive "3% of the gross amount collected from defendants with respect to compensatory damages . . ." effectively giving Glenn an interest in the settlement fund itself. *Democratic Central Committee* held that "An associate counsel can only obtain an attorney's lien if the client authorizes or ratifies his employment by the principal attorney and the client agreed to have his associate's fee paid from the judgment." In *Democratic Central Committee* the clients never authorized associate counsel's employment by the attorney

of record.  By contrast, all the Peterson Plaintiffs represented by Glenn knew of and ratified

Glenn's employment by the F&P Defendants.  Glenn personally interviewed each of those

Peterson Plaintiffs, and presented evidence to the Special Master on behalf of each of those

Peterson Plaintiffs.  Glenn personally signed each of the retainer agreements with those Peterson

Plaintiffs twice -- once in his individual capacity and once as agent for Fay & Perles.

**POINT VI**
**VENUE IS PROPER IN THIS DISTRICT**

The F&P Defendants argue that venue is improper in this Court because neither plaintiff

nor defendants are engaged in any acts in this district and "the subject matter of this action is not

the property the Peterson Plaintiffs seek to attach."

This argument is incorrect.  The venue statute, 28 U.S.C. § 1391, states in pertinent part:

> (a)    A civil action wherein jurisdiction is founded only on diversity of
> citizenship    may . . . be brought only in . . . (2) a judicial district in
> which . . . a substantial part of the property that is the subject of the action
> is situated."

Where a plaintiff commences an in rem action to determine the parties' respective

interests in property located – and in this case frozen – in a district, venue is proper in that

district under 28 U.S.C. § 1391(a)(2).  *Gulf Crossing Pipeline Co., LLC v. 86.36 Acres of Land,*

*More or Less,* 2008 WL 2465892 (W.D. La. June 18, 2008).

In his official "Commentary on the 1988 and 1990 Revisions of Section 1391" David D.

Siegel writes (28 U.S.C.A. § 1391, p. 13) that "If tangible, or at least identifiable property is the

subject matter of the action . . . proper venue lies in any district in which a 'substantial part' of

the property lies . . .."  In this case, Iranian assets frozen in New York – including real property –

are the subject of both the collection action and of Glenn's charging lien.  Venue is therefore

proper in New York pursuant to 28 U.S.C. A. § 1391(a)(2).

22

Moreover, defendant Rothenberg maintains a law office in New York and is clearly subject to personal jurisdiction in New York.  Venue would therefore also be proper pursuant to 28 U.S.C.A. § 1391(a)(3), which provides that venue is proper in "a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought."

### POINT VII
### GLENN WITHDRAWS HIS CLAIM FOR INJUNCTIVE RELIEF

Glenn has filed Intervention Complaints in related litigation.  He therefore withdraws his claim for injunctive relief in this action.

### CONCLUSION

For the reasons set forth above and in the accompanying declaration of Plaintiff Jay Glenn, the Court should deny the motion to dismiss.

Dated:   New York, New York
      June 24, 2011

Daniel Cobrinik (DC 6406)
Attorney for Plaintiff
276 Fifth Avenue – Suite 405
New York, New York 10001
(212) 725-6888