UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
JAY GLENN,

                          Plaintiff,

     -against-

THOMAS FORTUNE FAY, *et al.*

                      Defendants.
-------------------------------------------------------------------x

10-cv-8287 (WHP)

DECLARATION OF
JAY GLENN IN
OPPOSITION TO MOTION
TO DISMISS COMPLAINT

Plaintiff Jay Glenn declares the following under penalty of perjury:

1.     I have personal knowledge of the facts set forth below and I make this declaration in opposition to the motion to dismiss by defendants Thomas Fortune Fay, Steven R. Perles and their law firm, Fay & Perles (the "F&P Defendants"). Defendant Anthony LaSpada has joined in the motion but defendant Allan Louis Rothenberg apparently has not joined the motion.

2.     I am an attorney. I claim a charging lien against Iranian assets which were frozen in collection actions in this district, based on my representation of 104 individual plaintiffs in *Peterson v. Islamic Republic of Iran,* Case No. 01-cv-02094 (D.D.C.) (the "Peterson Liability Action"). Although the F&P Defendants discussed the Peterson Liability Action with me on numerous occasions from 2002 to 2008, during this time period they never questioned my right to payment from any fund that was ultimately recovered from Iran. However, in March 2010, the F&P Defendants told me for the first time that they disputed my right to payment. I brought this declaratory judgment action after the F&P Defendants told me that they did not recognize my right to payment in full for the legal services that I rendered on behalf of these 104 Plaintiffs.

3.      The Peterson Liability Action was brought to hold the Islamic Republic of Iran accountable for its role in training, supporting and funding the terrorists who bombed the United States Marine Barracks in Beirut, Lebanon, on October 23, 1983.

4.      In or about 2001, the F&P Defendants purchased advertising in nationwide publications directed to military personnel and their families, to recruit victims of terrorism for a lawsuit against Iran. On hearing of the F&P Defendants' plans to sue Iran, many victims of Iranian state sponsored terrorism – including approximately forty (40) New York residents – hired the F&P to bring the Peterson Liability Action against Iran.

5.      There is an informal network of Peterson Liability Plaintiffs who have developed close personal relationships with each other. These individuals communicate with each other on a regular basis, and some of them communicate with me on a regular basis. I have been told by some of the Plaintiffs in the Peterson Liability Action (the "Peterson Plaintiffs") that the F&P Defendants represented several New York residents in the Peterson Liability Action. In the course of this representation, the F&P Defendants, through their New York agents, (1) interviewed New York residents in New York, (2) deposed New York residents in New York, and (3) held evidentiary hearings on damages in New York for a Special Master.

6.      The F&P Defendants have now hired the New York law firm of Salon Marrow Dyckman Newman & Broudy LLP ("SMD") to litigate at least four separate collection actions in New York[1] on behalf of all the plaintiffs (the "Peterson Plaintiffs") in the Peterson Liability Action. The F&P Defendants have a substantial interest in these New York proceedings: if their

---

[1] The four collection actions in this district are (1) Levin, et al., v. Bank of New York, et al., 09-cv-5900 (RPP)(S.D.N.Y.); (2) Peterson, et al., v. Islamic Republic of Iran, et al., 18 Mis 302(BSJ)(S.D.N.Y.); (3) Peterson, et al., v. 650 Fifth Avenue Company, et al. 10-cv-01627 (RJH)(S.D.N.Y.), and (4) In re 650 Fifth Avenue and Related Properties, 08-cv-10934 (RJH)(S.D.N.Y.).

New York collection counsel is successful, the F&P Defendants will personally collect several hundred million dollars from assets located in New York.

7.     In addition to pursuing collection of the Peterson Liability Action judgment in New York, the F&P Defendants – through New York counsel that they retained – brought other actions in New York on behalf of other clients that they represented.  The F&P Defendants represented the plaintiffs in Bonk et al. v. Islamic Republic of Iran, 08-cv-1273 (RCL) (D.D.C.), Valore, et al. v. Islamic Republic of Iran, 03-cv-1959 (RCL)(D.D.C.), Estate of Silva and Spencer et al v. Islamic Republic of Iran 06-cv-750 (RCL)(D.D.C.) and Estate of Bland, et al, 05-cv02124 (RCL)(D.D.C.).  The F&P Defendants evidently filed lis pendens in New York prior to entry of judgments in the above-referenced actions, and after judgments were entered in these cases, the F&P Defendants undertook collection actions in New York.

8.     Each of the 104 Peterson Plaintiffs that I represented knew of and consented to my representation.  I personally met with each of these Peterson Plaintiffs. My written agreement provides that I am to receive "3% of the gross amount collected from the Defendants with respect to compensatory damages . . ."  This is an interest in the entire fund being collected for the Peterson Plaintiffs.  This action is brought against the F&P Defendants because in their capacity as lead counsel for the Peterson Plaintiffs they will likely have ultimate responsibility for receiving and disbursing any funds collected on the Peterson Liability Action, and they have already told me that I will not be paid in full.

9.     I located and signed up forty (40) plaintiffs for the Peterson Liability Action.  The retainer agreements for these 40 plaintiffs were each signed by (1) the new Peterson Plaintiff that I located, (2) me in my capacity as agent for F&P, and (3) me in my personal capacity.  I was responsible for proving damages on behalf of all of these additional Peterson Plaintiffs.

10.     I appeared in the liability phase of the Peterson Liability Action, and I was counsel of record in the proceedings to prove damages before the Special Master on behalf of my 104 Peterson Plaintiffs. From 2003 to 2006, I prepared evidentiary submissions and attended hearings before a Special Master, to prove the damages suffered by each of my 104 Peterson Plaintiffs. Between July 26, 2005 and September 12, 2006, the Special Master issued fourteen (14) separate reports on damages suffered by my 104 Peterson Plaintiffs. Each time I received a report from the Special Master, I transmitted the report to the F&P Defendants, together with a cover letter setting forth my provisional calculation of the payments to be made if the full provisional award recommended by the Special Master were to be recovered. My calculations included both my Three Percent (3%) contingent fee for proving damages plus my 11.11% contingent referral fee, where appropriate.

11.     From 2002 to 2008 I consulted with the F&P Defendants on a continuous basis concerning the status of my investigations, my interviews and new documentary evidence. Occasionally Defendant Fay traveled with me for hearings before the Special Master and other proceedings. During this period, the F&P Defendants and I had many conversations about the Peterson Plaintiffs. The F&P Defendants never questioned my right to payment in any of these conversations.

12.     On information and belief, Iranian cash and assets worth more than Two Billion Dollars ($2,000,000,000.00) have now been frozen in the Peterson Collection Actions in this District, and the Peterson Plaintiffs – along with the F&P Defendants and me – are waiting for a turnover order in those actions.

13.     I have signed and submitted numerous pleadings and other documents to the Special Master and I appeared of record for the Peterson Plaintiffs before the Special Master.

4

There is no indication anywhere in the record that I was treated by the Special Master responsible for determining damages as anything other than an attorney of record for the Peterson Plaintiffs. Finally, I did not merely assist the F&P Defendants in preparation of papers: once the District Court ordered the F&P Defendants to prove the damages suffered by the Peterson Plaintiffs, I entered the case to serve as co-counsel.

14.     This action is brought against the F&P Defendants because in their capacity as lead counsel for the Peterson Plaintiffs, they will likely have ultimate responsibility for receiving and disbursing any funds collected on the Peterson Liability Action. The F&P Defendants have already disputed my right to payment from this fund.

15.     For the reasons set forth above and in the accompanying Memorandum of Law, the Court should deny the motion to dismiss.

Dated:     New York, New York
           June 24, 2011

                                         Jay Glenn

5