# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **JAY GLENN,** | ) Civ. Action No. 10-cv-8287 (WHP) |
| Plaintiff, | ) |
| vs. | ) |
| **THOMAS FORTUNE FAY,** *et al.* | ) |
| Defendants. | ) |

## REPLY MEMORANDUM OF LAW OF THOMAS FAY, STEVEN PERLES AND FAY & PERLES IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS

James P. Bonner
Stone Bonner & Rocco LLP
260 Madison Avenue, 17th Floor
New York, New York 10016
(212) 239-4340

*Attorney for Defendant Steven Perles*

Annie Kaplan
Fay Kaplan Law
777 Sixth Street NW, St. 410
Washington, DC 20001
(202) 589-1300

*Attorney for Defendants Thomas Fortune Fay and Fay and Perles*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. i

ARGUMENT ...............................................................................................1

I.      GLENN'S COMPLAINT DOES NOT PRESENT AN ACTUAL
        CONTROVERSY ...................................................................................4

II.     GLENN HAS NOT ALLEGED ADEQUATELY THAT THE COURT
        SHOULD EXERCISE IN REM JURISDICTION OVER HIS CLAIMS ...........4

III.    CPLR § 302 DOES NOT PROVIDE PERSONAL JURISDICTION ................5

IV.    GLENN HAS NOT ALLEGED ADEQUATELY HIS ENTITLEMENT TO A
        CHARGING LIEN UNDER CONTROLLING WASHINGTON, DC LAW .....8

V.      NEW YORK IS NOT THE PROPER VENUE FOR THIS CASE .....................9

CONCLUSION ...........................................................................................10

## TABLE OF AUTHORITIES

### CASES

*Agribank, FCB v. Cupples*,
    850 F. Supp. 780 (E.D. Ark. 1993) ...................................................................3

*Bankers Trust Co. v. Equitable Life Assurance Soc.*,
    22 A.D.2d 579 (1st Dep't 1965) ........................................................5

*Best Van Lines, Inc. v. Walker*,
    490 F.3d 239 (2d Cir. 2007)...................................................................6, 8

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)...................................................................8

*Democratic Central Comm. v. Washington Metropolitan Area Transit Comm'n*,
    941 F.2d 1217 (D.C. Cir. 1991). ..........................................................8

*Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*,
    7 N.Y.3d 65 (2006) ...................................................................6, 7

*E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*,
    241 F.3d 154 (2d. Cir. 2001)...................................................................3

*In re Estate of Levine*,
    154 Misc. 700 (N.Y. Sur. Ct. 1935).......................................................4

*Feuchtwanger v. Central Hanover Bank & Trust Co.*,
    288 N.Y. 342 (1942) ...................................................................5

*Firestone v. Wiley*,
    485 F.Supp.2d 694 (E.D. Va. 2007) ...................................................3

*Fischbarg v. Doucet*,
    9 N.Y.3d 375 (2007) ...................................................................7

*Georgia-Pacific Consumer Prods., LP v. Int'l Paper Co.*,
    566 F. Supp. 2d 246 (S.D.N.Y. 2008)...................................................3

*Great Northern Paper Co. v. Babcock & Wilcox Co.*,
    46 F.R.D. 67 (N.D. Ga. 1968)...................................................................2

*International Shoe Co. v. Washington*,
    326 U.S. 310 (1945)...................................................................8

*Itar-Tass Russian News Agency v. Russian Kurier, Inc.*,
    140 F.3d 442 (2d Cir. 1998)..................................................................8-9

*Keene Corp. v. Insurance Co. of N. Am.*,
    513 F. Supp. 47 (D.D.C. 1981) ...........................................................3

*Kreutter v. McFadden Oil Corp.*,
    71 N.Y.2d 460 (1988) .........................................................................6, 7

*Lumbermens Mut. Casualty Co. v. Borden Co.*,
    70 F.Supp.2d 346 (S.D.N.Y. 1999).................................................1-2

*McGowan v. Smith*,
    52 N.Y.2d 268 (1981) .........................................................................7

*McKennell v. Payne*,
    197 A.D. 340 (2d Dep't 1921) ...........................................................4-5

*MedImmune, Inc. v. Genetech*,
    549 U.S. 118 (2007) ...........................................................................1

*National R. Passenger Corp. v. Consolidated Rail Corp.*,
    670 F. Supp. 424 (D.D.C. 1987) .......................................................3

*Oishei v. Pennsylvania R. Co.*,
    117 A.D. 110 (1st Dep't 1907) ...........................................................5

*Orseck v. Shemesh*,
    243 A.D.2d 790 (3d Dep't 1997) .......................................................4

*Republic of Iraq v. Beaty*,
    129 S. Ct. 2183 (2009) .......................................................................1, 3

*Rubin v. Islamic Republic of Iran*,
    637 F.3d 783 (7th Cir. 2011) .............................................................1, 3

*Solow Bldg. Co., LLC v. ATC Assocs.*,
    388 F.Supp.2d 136 (E.D.N.Y. 2005) ................................................3

*Universal Oil Ltd. v. Allfirst Bank*,
    419 F.3d 83 (2d Cir. 2005)..................................................................5

*Wainwright v. Kraftco Corp.*,
    53 F.R.D. 78 (N.D. Ga. 1971)...........................................................................2

STATUTES

28 U.S.C. § 1391 ..................................................................................... 9-10

28 U.S.C. § 1655...........................................................................................4

CPLR § 302................................................................................................ 5-8

Defendants Thomas Fay, Steven Perles and Fay & Perles respectfully submit this Reply Memorandum in further support of their motion to dismiss Plaintiff's Complaint.  In this brief, Defendants employ the same abbreviations they utilized in their moving papers.

**ARGUMENT**

**I.     GLENN'S COMPLAINT DOES NOT PRESENT AN ACTUAL CONTROVERSY**

Glenn's contention that an Article III case or controversy exists here disregards MedImmune, Inc. v. Genetech, 549 U.S. 118 (2007), which Glenn mistakenly cites.   The MedImmune Court stated:

> Our decisions have required that the dispute be "definite and concrete, touching the legal relations of parties having adverse legal interests"; and that it be "real and substantial" and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."

Id. at 127 (internal citations omitted).  Glenn concedes that the Peterson Plaintiffs have collected no funds from Iran since they obtained their judgment or since contested attachment proceedings began in 2010.  Neither Glenn's Complaint nor his brief provides any insight regarding when and how the Peterson Plaintiffs will collect those funds.  See Def. Br. at 13 (citing Republic of Iraq v. Beaty, 129 S.Ct. 2183 (2009) and Rubin v. Islamic Republic of Iran, No. 08-2805, 2011 U.S. App. LEXIS 6394, at *2-16 (7th Cir. 2011) as examples of the tortured path victims of terrorism must often follow to collect judgments entered against rogue states).  Thus, Glenn's claimed entitlement to an indefinite sum of money based upon the uncertain ability of the Peterson Plaintiffs to collect an unspecified sum from Iran at an unknown future date presents a quintessential example of the type of advisory opinion based upon a "hypothetical state of facts" that MedImmune bars.

Glenn's reliance upon Lumbermens Mut. Casualty Co. v. Borden Co., 241 F. Supp. 683,

1

690 (S.D.N.Y. 1965) is also misplaced.  <u>Lumbermens</u> involved a nine-party suit by an insurer against its, insured, other insurers and parties from whom the plaintiff insurer claimed entitlement to subrogation.  Focusing upon insurance industry-specific issues related to declarations of non-coverage, the court determined that it should exercise jurisdiction over the plaintiff insurer's declaratory judgment claims.  <u>Id.</u> at 691-93.  In reaching that decision, the court emphasized that assessing whether to exercise jurisdiction over coverage issues presented prior to a determination of liability fell squarely within the court's discretion.  <u>Id.</u> at 693, 701.  Moreover, the court noted that, in the absence of a declaratory judgment, the plaintiff would be required to litigate multiple actions that could easily produce contradictory judgments regarding various issues.  The court concluded that this factor weighed heavily in favor of the court exercising its discretion in favor of adjudicating the declaratory judgment action.  <u>Id.</u> at 696-98.

No similar factor weighs in favor of declaring the parties' respective rights here, where Glenn's rights can easily be determined after the <u>Peterson</u> Plaintiffs have actually collected funds from Iran.  Thus, <u>Lumbermens</u> provides no meaningful support  for sustaining Glenn's declaratory judgment claims.  <u>See</u>, <u>e.g.</u>, <u>Wainwright v. Kraftco Corp.</u>, 53 F.R.D. 78, 83 (N.D. Ga. 1971) (distinguishing <u>Lumbermens</u> as turning upon its unique facts and ruling that no case or controversy existed in an action involving a request that the court declare various parties' rights <u>if</u> the plaintiffs succeeded in establishing their claims because the plaintiffs' success remained highly contingent); <u>Great Northern Paper Co. v. Babcock & Wilcox Co.</u>, 46 F.R.D. 67, 70 (N.D. Ga. 1968) ("The court should not pass on questions of insurance coverage and liability for indemnification when the contingencies giving rise to them may never occur").

The insurance decisions that Glenn cites that involved requests that courts declare the parties' rights in connection with numerous pending product liability actions are distinguishable

on similar grounds.[1]  Other decisions that Glenn invokes involved inapposite circumstances where plaintiffs sought declarations concerning costs that they had <u>actually incurred</u> by the time they initiated their lawsuits.  <u>Georgia-Pacific Consumer Prods., LP v. Int'l Paper Co.</u>, 566 F.Supp.2d 246, 256 (S.D.N.Y. 2008) (plaintiff was entitled to declaratory judgment concerning parties' respective liability for environmental remediation costs where plaintiff was "already incurring" and "will likely incur in the future" cleanup expenses expended in connection with a settlement reached with the EPA); <u>National R. Passenger Corp. v. Consolidated Rail Corp.</u>, 670 F.Supp. 424, 428-29 (D.D.C. 1987) (in action involving the interpretation of an indemnification agreement, a case or controversy existed where the plaintiff was already defending the action for which it claimed entitlement to indemnification from defendant).  Glenn also erroneously cites <u>Solow Bldg. Co., LLC v. ATC Assocs.</u>, 388 F.Supp.2d 136, 139 (E.D.N.Y. 2005), where the court <u>dismissed</u> a declaratory judgment action because – like Glenn's claims – the claims about which the plaintiff sought declaratory relief remained subject to multiple contingencies.

Glenn's efforts to distinguish cases such as <u>Agribank, FCB v. Cupples</u>, 850 F.Supp. 780, 782 (E.D. Ark. 1993) and <u>Firestone v. Wiley</u>, 485 F. Supp. 2d 694, 700 (E.D. Va. 2007) are also unconvincing.  In both cases, courts refused to grant declaratory relief because multiple contingencies had to be satisfied before the plaintiffs faced any injuries and no pressing need existed to adjudicate the parties' rights.  Cases like <u>Beaty</u> and <u>Rubin</u> leave no doubt that the

---

[1] <u>See</u>, <u>e.g.</u>, <u>Keene Corp. v. Ins. Co. of N. Am.</u>, 667 F.2d 1034, 1040 (D.C. Cir. 1981) (insured's case presented an actual case or controversy because "Keene has been, and will continue to be, sued for injuries that result from the use of its asbestos products" and in "each of these suits – past, present, and future – the rights and obligations of Keene and its insurers must be resolved"); <u>E.R. Squibb & Sons, Inc. v. Lloyd's Cos.</u>, 241 F.3d 154, 177 (2d. Cir. 2001) (insured's claims against high level excess insurers satisfied the case or controversy requirement where insured demonstrated the requisite "practical likelihood" that the defendants' coverage levels would be reached given the numerous product liability actions pending against the insured).

<u>Peterson</u> Plaintiffs will have to overcome many hurdles before they collect upon the Iranian assets, if they ever do.  Moreover, Glenn has not articulated why he must know today his entitlement to attorneys' fees although the <u>Peterson</u> Plaintiffs have been waiting patiently for decades to collect any compensation for their grievous injuries.  In light of those facts, no basis exists for Glenn's unseemly efforts to count his entitlements before the <u>Peterson</u> Plaintiffs actually secure any compensation from Iran.

## II.   GLENN HAS NOT ALLEGED ADEQUATELY THAT THE COURT SHOULD EXERCISE IN REM JURISDICTION OVER HIS CLAIMS

Glenn's in rem jurisdiction arguments are more remarkable for what they do not contain than for what Glenn actually asserts.  In particular, Glenn does not cite to a single decision that construes 28 U.S.C. § 1655 in his favor.  Nor has Glenn cited any case supporting his assertion that the Court should exercise in rem jurisdiction here although none of the Defendants have any ownership interest in the Iranian assets.  Thus, Glenn falls woefully short of establishing that the Court should exercise in rem jurisdiction.

The cases Glenn relies upon strongly reinforce the conclusion that no authority exists for his argument.  For example, the court in <u>In re Estate of Levine</u>, 278 N.Y.S. 36, 39 (N.Y. Sur. Ct. 1935) merely held that "[i]t cannot be doubted that this court has power to determine <u>whether funds in the hands of a fiduciary subject to the direction of this court</u> are general funds of an estate or are subject to claims specifically enforceable therefrom."  Other in rem decisions that Glenn cites similarly turned upon courts' ability to exercise jurisdiction over settlement funds that had <u>already been paid</u> to plaintiffs.  <u>See</u>, <u>e.g.</u>, <u>Orseck v. Shemesh</u>, 662 N.Y.S.2d 622, 624 (3d Dep't 1997) (holding only that court could exercise in rem jurisdiction over settlement funds <u>actually paid</u> to client in action brought by counsel to enforce charging lien); <u>McKennell v. Payne</u>, 189 N.Y.S. 7, 10 (2d Dep't 1921) (court could exercise in rem jurisdiction over action

4

brought by attorney to collect his share of settlement funds <u>actually paid</u> by the defendant in a personal injury action because the defendant was presumed, as a matter of law, to retain control over the plaintiff's counsel's share of the settlement funds); <u>Oishei v. Pennsylvania R. Co.</u>, 102 N.Y.S. 368, 370-71 (1st Dept. 1907) (merely holding that court could exercise in rem jurisdiction over settlement funds <u>actually paid</u> to a New York resident in an action brought by New York counsel to enforce a lien).

In sharp contrast to these case, there are no "funds in the hands of" Defendants over which the Court can exercise jurisdiction. Thus, these decisions provide no support for exercising in rem jurisdiction over Glenn's claims. Other cases that Glenn cites concern irrelevant issues regarding the legal characteristics of bank accounts and other intangible assets.[2]

Thus, Glenn seeks only in personam relief against Defendants, not the type of in rem relief related to funds maintained "in the hands" of defendants that courts have found sufficient to support in rem jurisdiction. As a result, the presence of the Iranian assets – the ownership of which remains a hotly contested issue –in New York cannot support exercising in rem jurisdiction over the claims that Glenn alleges. <u>E.g.</u>, <u>Universal Oil Ltd. v. Allfirst Bank</u>, 419 F.3d 83, 101 (2d Cir. 2005) ("seeking a judgment against a person rather than the property at issue will not permit" the exercise of in rem jurisdiction).

## III.    CPLR § 302 DOES NOT PROVIDE PERSONAL JURISDICTION

Glenn misunderstands and misconstrues CPLR § 302(a)(1), which is the only provision

---

[2]  <u>See</u> <u>Feuchtwanger v. Central Hanover Bank & Trust Co.</u>, 43 N.E.2d 434, 435 (N.Y. 1942) (holding only that a bank account constituted "specific personal property" located in this state under § 232 of New York's former Civil Practice Act); <u>Bankers Trust Co. v. Equitable Life Assurance Soc.</u>, 257 N.Y.S.2d 502, 507 (1st Dep't 1965) (considering whether the location of intangible assets can be different from the domicile of their owners). Notably, Glenn cites the First Department's <u>Bankers Trust</u> decision although the Court of Appeals later reversed that ruling. 281 N.Y.S.2d 57 (N.Y. 1967).

of the New York long arm statue upon which he relies in alleging that the Court may assert personal jurisdiction over Defendants.  CPLR § 302(a)(1) provides that jurisdiction may be exercised over a non-domiciliary who "transacts any business within the state or contracts anywhere to supply goods or services in the state."  It is well-established that jurisdiction under § 302(a)(1) depends upon the existence of "a substantial relationship between" the non-domiciliary defendant's transaction in New York and the plaintiff's cause of action.  See Deutsche Bank Sec. Inc. v. Montana Bd. of Investments, 818 N.Y.S.2d 164, 166-67 (N.Y. 2006) (under CPLR § 302(a)(1), "'proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted'") (quoting Kreutter v. McFadden Oil Corp., 527 N.Y.S.2d 195, 198-99 (N.Y. 1988)).

Thus, to determine if § 302(a)(1) is satisfied, courts analyze "(1) whether the defendant 'transacts any business' in New York and, if so, (2) *whether this cause of action 'aris[es] from' such a business transaction*."  Best Van Lines, Inc. v. Walker, 490 F.3d 239, 246 (2d Cir. 2007) (emphasis added)).  "'[A] suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York.'"  Id. (quoting Henderson v. INS, 157 F.3d 106, 123 (2d Cir. 1998)).

Under these authorities, Glenn's claims arise out of the Fee Agreement.  There is no "substantial relationship" between Glenn's unripe claims for compensation under that agreement and the acts that Glenn alleges Defendants have performed in New York in connection with prosecuting the Peterson collections actions.  Glenn contracted with Defendants in Washington,

6

DC for services to be rendered by Glenn in Illinois.  Neither Glenn nor the Defendants work out

of New York, offer services in New York, or conduct business here.  Thus, all of the § 302(a)(1)

cases that Glenn cites are distinguishable.[3]

   In McGowan v. Smith, 437 N.Y.S.2d 643, 644 (N.Y. 1981), which Glenn also cites, the

nondomiciliary defendant manufactured a fondue pot that malfunctioned and caused the

plaintiff's injuries.  The Court of Appeals held that the defendant was not subject to personal

jurisdiction under CPLR § 302(a)(1) because the plaintiff's cause of action for personal injury

did not arise out of the defendant's business contacts with New York, which consisted of

shipping the allegedly defective pot to this state for sale, and sending sales representatives to

New York from time to time to conduct market research.  Id. at 645.  These transitory business

activities were not "sufficiently related to the subject matter of the lawsuit to justify the exercise

of in personam jurisdiction under [CPLR § 302(a)(1)]."  Id.  Likewise, the transitory activities

that Glenn alleges Defendants have conducted in New York are not sufficiently related to the

subject matter of this lawsuit – i.e., Glenn's entitlement to fees for work he performed in Illinois

---

[3]  See House of Diamonds v. Borgioini, LLC, 737 F. Supp. 2d 162, 166 (S.D.N.Y. 2010) (cause
of action for nonpayment of diamonds delivered by New York plaintiff to nondomiciliary
defendant on consignment arose "directly out of" defendant's contacts with plaintiff in this
state); Fischbarg v. Doucet, 849 N.Y.S.2d 501, 508-09 (N.Y. 2007) (causes of action by New
York attorney against his former clients for breach of retainer agreement and unjust enrichment
arose out of the attorney-client relationship that defendants created and maintained with the
attorney in this state); Deutsche Bank, 818 N.Y.S.2d at 1142-43 (cause of action for breach of
contract arose out of a sale of bonds negotiated and concluded in New York between defendant
and New York plaintiff); Schur v. Porter, 712 F.Supp. 1140, 1143 (S.D.N.Y. 1989) (causes of
action for breach of fiduciary duty and legal malpractice arose from the drafting and execution in
New York of two partnership agreements); Kreutter, 527 N.Y.S.2d at 202-03 (causes of action
for fraud and breach of contract arose from an investment in a Texas oil venture that New York
plaintiff made in this state through defendants' agent located in New York); Hoffritz for Cutlery,
Inc. v. Amajac, Ltd., 763 F.2d 55, 59-60 (2d Cir. 1985) (substantial nexus existed between New
York plaintiff's cause of action for breach of franchise agreement and business transacted in
New York by defendants when they travelled to this state to negotiate and perform the
agreement).

– to justify exercising jurisdiction over Defendants pursuant to CPLR § 302(a)(1).[4]

Glenn's concession that the Court cannot exercise personal jurisdiction over defendant Anthony LaSpada also supports the conclusion that the same is true with respect to the remaining Defendants.  Opp. at 2, n. 2.  Like LaSpada, none of the Defendants have a law office or practice law in New York.  Furthermore, the only contract among the parties originated in Washington, DC, and no party provided legal services in New York.  In these circumstances, no meaningful difference exists from the standpoint of CPLR § 302(a)(1) between LaSpada and the remaining Defendants.

## III.   GLENN HAS NOT ALLEGED ADEQUATELY HIS ENTITLEMENT TO A CHARGING LIEN UNDER CONTROLLING WASHINGTON, DC LAW

Glenn tacitly concedes that Washington, DC law governs his contract with Defendants and, therefore, his entitlement to a charging lien in this action.  Glenn does cite Democratic Central Comm. v. Washington Metropolitan Area Transit Com'n, 941 F.2d 1217, 1219 (D.C. Cir. 1991).  Nevertheless, he completely ignores the court's dispositive holding that, under Washington, DC law, lawyers may assert charging liens only against their clients, not co-counsel.  Id.  Thus, because Glenn undeniably asserts claims only against his co-counsel, he has identified no substantive basis for the declaratory relief he seeks in his first two causes of action.

Glenn's discussion of Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442 (2d Cir. 1998) is irrelevant for two reasons.  First, Itar-Tass exclusively discussed New York law regarding charging liens, not the Washington, DC law that governs Glenn's claims.  Second,

---

[4]  Glenn's citations to International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) and Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-75 (1985), and his arguments concerning constitutional minimum contacts, are irrelevant because the New York long arm statute does not authorize jurisdiction over Defendants.  See Best Van Lines, 490 F.3d at 244 ("If jurisdiction is statutorily impermissible, of course, we need not reach the question of its constitutionality.").

Itar-Tass concerned whether a lawyer's litigation activities sufficed to provide a basis for him to assert a charging lien, an issue that did not form the basis for Defendants' motion to dismiss.

## V.      THIS DISTRICT IS NOT THE PROPER VENUE FOR THIS CASE

Glenn also fails to establish that this District is the appropriate venue for this litigation. Contrary to Glenn's assertions, he cannot rely upon 28 U.S.C. § 1391(a)(2) as the basis for venue in this action.  Section 1391(a)(2) dictates that venue is proper in a diversity action in "a judicial district in which … a substantial part of property that is the subject of the action is situated."  As Defendants demonstrate above, however, the subject matter of this action is not the Iranian assets located in New York.  Rather, Glenn seeks in personam relief against Defendants with respect to actions undertaken outside of this state.  See Point III.  Thus, once the Court determines that it cannot exercise in rem jurisdiction over Glenn's claims, the conclusion that § 1391(a)(2) provides no basis for venue in this District follows directly.

Glenn's inability to rely upon 28 U.S.C. § 1391(a)(3) as the basis for venue in this District is clearer still.  Under § 1391(a)(3), venue is proper in a diversity action in "a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought."  (Emphasis added).  Without doubt, Glenn could pursue this action in the District Court for the District of Columbia, where the Peterson action was litigated and where Defendants reside.  Thus, § 1391(a)(3) cannot support venue in this District.

It also bears emphasis that Glenn's concession that the Court cannot exercise jurisdiction over defendant LaSpada strongly supports the conclusion that this District is not an appropriate venue for Glenn's lawsuit.  The Court will recall that Glenn delayed this action substantially by amending his complaint long after he initiated this suit to assert claims against defendants

Rothenberg and LaSpada, whom Glenn identified as necessary parties to this litigation given the nature of the relief Glenn seeks. Now, however, Glenn effectively concedes that he cannot obtain full relief in this jurisdiction. Accordingly, Glenn's concession regarding his inability to obtain jurisdiction over LaSpada in this District provides further support for the conclusion that the Court should either dismiss Glenn's claims or, at a minimum, transfer this action to Washington, DC, where Glenn can pursue his claims against all of the defendants he previously identified as necessary parties.

## <u>CONCLUSION</u>

For all the foregoing reasons, Glenn's complaint against Defendants Fay, Perles, and Fay & Perles should be dismissed in its entirety, or in the alternative, this case should be transferred to the United States District Court for the District of Columbia.

Dated: July 8, 2011

Respectfully submitted,

FAY KAPLAN LAW, P.A,

By: /s/ Annie Kaplan
777 Sixth Street NW, St. 410
Washington, DC 20001
(202) 589-1300

*Counsel for Defendants Thomas
Fortune Fay and Fay & Perles*

STONE BONNER & ROCCO LLP

By: /s/ James P. Bonner
260 Madison Avenue, 17th Floor
New York, New York 10016
(212) 239-4340

*Counsel for Defendant Steven Perles*

10

## **CERTIFICATE OF SERVICE**

     I, James P. Bonner, hereby certify that I served a copy of the foregoing upon all counsel for the parties in this action by electronic mail and the court's ECF system this 9th day of July 2011.

                                   /s/ James P. Bonner