```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   JAY GLENN,

 4                  Plaintiff,

 5             v.                              10 Civ. 8287 (WHP)

 6   THOMAS FORTUNE FAY, et al.,
                                               Argument and Decision
 7                  Defendants.

 8   ------------------------------x

 9                                             New York, N.Y.
                                               July 29, 2011
10                                             11:25 a.m.

11   Before:

12             HON. WILLIAM H. PAULEY III

13                                             District Judge

14

15             APPEARANCES

16

17   DANIEL COBRINIK
          Attorney for Plaintiff
18

19   FAY KAPLAN LAW, P.A.
          Attorneys for Defendants Fay, Fay & Perles, and Laspada
20   BY:  ANNIE P. KAPLAN

21

     STONE BONNER & ROCCO LLP
22        Attorneys for Defendant Perles
     BY:  JAMES P. BONNER
23

24

25
                       SOUTHERN DISTRICT REPORTERS, P.C.
                               (212) 805-0300
```

1                   (Case called)

2                   THE COURT: Good morning. This is oral argument on
3      the defendants' motion to dismiss. Do you want to be heard?

4                   MS. KAPLAN: Yes, your Honor. If it please the Court,
5      I'll argue first, and then Mr. Bonner will argue after me.

6                   THE COURT: Why am I going to hear from two?

7                   MR. BONNER: Your Honor, I think it is very unlikely I
8      will have anything to say at all. Ms. Kaplan will handle it.
9      If there is some follow-up, I may have a few words to say.

10                  MS. KAPLAN: Good morning, your Honor. I represent
11     Thomas Fortune Fay, I represent the partnership Fay & Perles,
12     and I represent Anthony Laspada. This is a Rule 12 motion to
13     dismiss. The facts in the case, I believe the Court is well
14     acquainted with them, but briefly if I can go over them again.

15                  The issue involved is a declaratory judgment action
16     filed by Mr. Glenn. Mr. Glenn is Mr. Fay's brother-in-law and
17     was one of the damages attorneys on the case whose services
18     were retained back in June of 2003 to help prove damages in an
19     underlying litigation in the District of Columbia. The
20     underlying litigation which we call the Peterson litigation
21     involved the death of 241 Marines in 1983 at the attack in
22     Lebanon. We represented, "we" being the defendants Fay &
23     Perles, represented the 153 families.

24                  Fay & Perles tried the case as to the liability issues
25     before Judge Lambert down in Washington, D.C., and a liability

1   verdict was entered on May 30, 2003.  Judge Lambert then
2   directed Fay & Perles to prove the damage aspect of the
3   underlying case, the terrorism litigation case, through the use
4   of special masters.  Fay & Perles retained 14 damage attorneys
5   for the limited purpose of helping them put together the proofs
6   to prove the damages that these 153 families had sustained.
7   Mr. Glenn was one of these individuals.
8              All of the damage attorneys entered into fee
9   agreements for representing different members of different
10  families.  The fee agreements were entered June 13, 2003, by
11  all of the damage attorneys.  All of these agreements provided
12  that the fees to be received by attorneys, such as Mr. Glenn,
13  would be 3 percent of the gross amount collected from the
14  defendants.  They further provided the fees were contingent
15  upon collection and to the extent of collection only.
16             In addition, the agreement provided that it was the
17  only agreement between Fay & Perles and each of the damage
18  attorneys, Mr. Glenn specifically in this case, and that the
19  District of Columbia law would apply to any disputes.
20             Notwithstanding this agreement, Mr. Glenn has put
21  forth a petition to this Court for a declaratory judgment that
22  he has another, oral fee agreement as well for a contingency
23  fee of 11.11 percent of every family member that he contends he
24  referred to the Fay & Perles firm.
25             At this point the relief sought is a declaratory

1   judgment that this Court will recognize that there is an oral
2   contingency fee agreement in effect between Fay & Perles and
3   Thomas Fay and Stephen Perles reflecting the fact that Mr.
4   Glenn has an 11.11 contingency fee as well as a written
5   agreement entitling him to a 3 percent contingency fee on any
6   collected funds.
7            We filed motions to dismiss under Rule 12 in this case
8   on four bases:  First, that there was a lack of subject matter
9   jurisdiction; second, that there was a lack of personal
10  jurisdiction; third, lack of venue; and, fourth, that the
11  plaintiff has failed to state a cause of action.  I'm going to
12  run through each one if you want, your Honor.
13           THE COURT:  Quite frankly, I've read your brief.  I
14  think I'd like to hear from Mr. Cobrinik.
15           MS. KAPLAN:  I'll sit down.  Thank you.
16           MR. COBRINIK:  Your Honor, let me address one thing
17  that she has raised, and then I'll address the four arguments
18  that they have made.  It is not completely true that this is a
19  claim based solely on an oral agreement.  There was an oral
20  agreement.  There were, however, confirmatory letters from Mr.
21  Glenn to Fay & Perles.  These confirmatory letters are all
22  alleged in the complaint.
23           Essentially, what happened is after Mr. Glenn was
24  hired as a damages attorney, he discovered that there were
25  other people who ought to have been named as plaintiffs in the

1   case who were not, and he went out and he found them.  He told
2   Mr. Fay and Fay & Perles by virtue of that, I think I can bring
3   in additional plaintiffs, I'd like to be compensated for that.
4   He was told yes, you'll get a standard referral fee, one-third
5   of the amount that's attorney's fees.
6         Every time there was a decision by a special master as
7   to a particular group of plaintiffs --
8         THE COURT:  By the way, when you say, you know about
9   one-third of a one-third, don't take my silence as an
10  acknowledgment that I know that.  I don't.
11        MR. COBRINIK:  OK.  What he was told effectively was
12  that he would get 11.11 percent of the gross amount collected,
13  what amounts to a standard referral fee.  In the complaint we
14  have alleged that every time a special master awarded a
15  specific amount of damages, determined damages, for a group of
16  plaintiffs, there was a confirmative letter from Mr. Glenn to
17  Fay & Perles and Mr. Fay saying, in effect, this is what the
18  special master has determined, if there's collection in full,
19  here's what I'll be entitled to and how it's computed.  There
20  was never a dispute as to that.  The letters from Mr. Glenn
21  specifically referred to the 3 percent and the 11.11 percent.
22        Let me go through their arguments.  They argue that
23  this is not a case or controversy, because there is a
24  contingency out there, that contingency being collection on the
25  Peterson litigation.  That is true, there is a contingency out

1   there: Collection. The courts have held that the mere
2   existence of a contingency does not, however, destroy the
3   existence of a case or controversy.
4              THE COURT: Isn't a valid charging lien only against
5   proceeds actually recovered?
6              MR. COBRINIK: Yes, it is. Here proceeds are frozen.
7              THE COURT: So, how can you assert a lien against
8   Iranian assets if there has been no recovery?
9              MR. COBRINIK: The Iranian assets in question are
10  frozen.
11             THE COURT: Whether they are frozen or not, can you
12  answer my question? How can you assert a lien if there has
13  been no recovery?
14             MR. COBRINIK: Upon recovery, the lien would come into
15  effect.
16             THE COURT: My question presumes in it that there is
17  no recovery. There has been no recovery, correct?
18             MR. COBRINIK: There has as yet been no recovery.
19             THE COURT: How can you assert a lien if there has
20  been no recovery?
21             MR. COBRINIK: The lien attaches to the cause of
22  action, and it attaches to the cause of action and any proceeds
23  that follow. The lien exists. An attorney has a lien prior to
24  recovery. It's not that the lien comes into effect immediately
25  upon recovery. The lien attaches to the cause of action. In

1  fact, there has been litigation between attorneys as to their
2  respective liens before there is a recovery.
3            But the cause of action has already been reduced to
4  judgment, funds have been frozen.  We are waiting for a
5  turnover.  If the lien attaches to the cause of action, it
6  effectively attaches to any proceeds thereof.  Judiciary law
7  section 475 says in whatever hands they may be.  I think that's
8  a direct quote, "in whatever hands."
9            So, the fact that these assets are frozen, whether
10 they are held by Citibank or the court or Bank of America or
11 whatever holds them, the lien attaches to the cause of action,
12 and to the extent that those assets ever become proceeds of the
13 cause of action, it attaches to those.
14           THE COURT:  Doesn't there have to be property in New
15 York for there to be in rem jurisdiction?
16           MR. COBRINIK:  There is property in New York, your
17 Honor.  If I may, there are, as I understand it, bank accounts
18 in New York, frozen in New York.  There are cases -- and we
19 cite them, I can find the cites -- which say a bank account
20 located in New York gives you in rem jurisdiction in New York.
21           THE COURT:  Why aren't you a party to the actions
22 before Judge Jones?
23           MR. COBRINIK:  Your Honor, we could have gone that
24 route.  We thought that this would be a better route.  We would
25 be fine doing that.  We don't want to do anything that would

1    complicate that action.

2              THE COURT:  In an in rem proceeding, don't the parties

3    usually follow the property?

4              MR. COBRINIK:  Yes.

5              THE COURT:  Why would you start another in rem action?

6              MR. COBRINIK:  The assets are located in New York.

7    That's why we did an in rem action here.  As we understand it,

8    what is before Barbara Jones, Judge Jones, is essentially a

9    collection matter on the entire Peterson litigation.

10             THE COURT:  It's an in rem proceeding.

11             MR. COBRINIK:  As we understand it, it is an in rem

12   proceeding.

13             THE COURT:  You thought it was a good idea to start a

14   second in rem proceeding, is that it?

15             MR. COBRINIK:  Correct.

16             THE COURT:  Turn to the venue question.

17             MR. COBRINIK:  OK.  To the extent that the assets are

18   in New York and this is a dispute over assets in New York,

19   venue would lie in New York.  There is venue in New York when

20   the subject matter of the litigation, incomes assets in New

21   York over which Mr. Glenn has a lien, are located in New York.

22             THE COURT:  Didn't a substantial part of the events

23   giving rise to this matter occur in the District of Columbia?

24             MR. COBRINIK:  They occurred in the District of

25   Columbia, they occurred in Illinois.  At this point, though, to

1    the extent that this is an in rem proceeding, this is over
2    assets located in New York.
3            I would note also that in terms of the defendants,
4    there is also personal jurisdiction over them here.  Since
5    approximately 2001-2002, they have represented about 40
6    Peterson plaintiffs from New York.  As we understand it, agents
7    of the defendants have conducted hearings before special
8    masters in New York or at least interviews and depositions in
9    New York.  The assets that they have now frozen that they seek
10   to collect are in New York.  We think that gives New York
11   venue.
12           THE COURT:  Anything further?
13           MR. COBRINIK:  If there are any questions, I'm happy
14   to answer them, your Honor.
15           THE COURT:  Doesn't the personal jurisdiction
16   provision only apply if 1391(a)(1) and (2) don't apply?
17           MR. COBRINIK:  Personal jurisdiction becomes
18   irrelevant if there is in rem jurisdiction.  Is that what you
19   are getting at?
20           THE COURT:  You allege in rem jurisdiction, right?
21           MR. COBRINIK:  Yes.
22           THE COURT:  You're presuming, aren't you, that there
23   is no other suitable venue?
24           MR. COBRINIK:  I think that's correct.
25           THE COURT:  But there is, isn't there?

1          MR. COBRINIK:  There would be suitable venues for a
2    personal action.  But if he has a lien over assets, he
3    shouldn't have to give up that lien and pursue a personal
4    action for breach of contract without assets that are securing
5    that.  There are two separate things.  If he in fact has an
6    interest in these particular assets, and the contract is --
7          THE COURT:  In the complaint don't you allege that the
8    lien will only attach if and when the assets are recovered?
9          MR. COBRINIK:  I don't know that we allege it that
10   way.  It certainly is true that we would only collect if assets
11   are recovered.
12         THE COURT:  Do you have your complaint there?  Why
13   don't you take a look at paragraph 14.
14         MR. COBRINIK:  Your Honor, I apologize.  I don't
15   believe I have a copy of the complaint.
16         THE COURT:  You came to court without your complaint?
17         MR. COBRINIK:  I have the motion papers.
18   Unfortunately, I just printed them out.
19         THE COURT:  It's a motion to dismiss.
20         MR. COBRINIK:  Yes, your Honor.
21         THE COURT:  OK.
22         MR. COBRINIK:  There are two separate things here,
23   your Honor.  There is a breach of contract action and there is
24   a right to specific assets.  There is no question he could
25   bring a breach of contract action in Washington, D.C.  There is

1   already an anticipatory repudiation where they told him we
2   don't owe you what you think is owed.  If, however, his right
3   is to specific assets which are in fact located in New York,
4   that's a different action.
5           THE COURT:  Anything further?
6           MR. COBRINIK:  No, your Honor.
7           THE COURT:  Mr. Bonner, anything further?
8           MR. BONNER:  Very briefly, your Honor, two things.
9   Number one, I think Mr. Cobrinik misspoke where he said that
10  there are cases where courts have decided to exercise in rem
11  jurisdiction where there has not been a recovery yet of
12  settlement funds.
13          Every one of the cases that he has cited in his
14  position brief, and we distinguished every one of them, your
15  Honor, but each and every single one of them involved a
16  situation where settlement funds had already been paid to the
17  plaintiff, and the court said that in that circumstance it
18  could exercise in rem jurisdiction over those assets.
19          The very last thing I'd like to say, your Honor, is we
20  have spoken this morning in great detail about the
21  jurisdictional issues.  Of course, that is important because
22  the Court needs to decide first and foremost whether it has
23  jurisdiction over this case.
24          But even if the Court were to leapfrog all of those
25  issues that we outline in our papers in our motion to dismiss,

1  substantively, at the end of the day, the D.C. Court of Appeals
2  has said that he cannot get an attorney's lien against the
3  defendants in this case.
4  　　　　　If he wants an attorney's lien, the appropriate way to
5  proceed is against the clients, not the co-counsel.  So even if
6  we were to surmount all those jurisdictional issues, your
7  Honor, the case should still be dismissed on that substantive
8  basis.
9  　　　　　MR. COBRINIK:  Your Honor, may I respond to that?
10 　　　　　THE COURT:  Yes.
11 　　　　　MR. COBRINIK:  The D.C. case that they referred to,
12 it's a single case, Democratic National Committee, involves an
13 attorney who was hired essentially to create a fee petition.
14 He did that.  He also did some work for the lead attorney on a
15 totally separate case.
16 　　　　　He had a contract to be paid a certain amount.  He
17 basically asserted a lien against the lead attorney for the
18 entire amount he was supposed to be paid even though a lot of
19 it had nothing to do with that case, even though none of it
20 really had to do with representation of the plaintiffs in that
21 case.
22 　　　　　In terms of what New York courts have looked at, if
23 you look at the Abner Louima case, where there was a fee
24 dispute, the court said essentially that where lead attorneys
25 contract with other attorneys and the contract provides that

1  these other attorneys are to receive part of the attorney's fee

2  that is generated, that's, in effect, an equitable assignment

3  of the lien and that lien is enforceable.

4           I haven't seen any case law one way or another in

5  Washington which would challenge that, nor do I think it should

6  be challenged.  I think it is only fair that if someone works

7  on a case, and this is a case where Mr. Glenn is asserting a

8  lien only for work done on this case, done with the knowledge

9  and consent of the Peterson plaintiffs, he should be paid.

10          THE COURT:  Before this Court is the defendants'

11 motion to dismiss on various grounds, including lack of in rem

12 jurisdiction and improper venue.  This Court has reviewed the

13 parties' motion papers and considered their arguments, and I'm

14 prepared to rule.

15          Plaintiff alleges in rem jurisdiction based on certain

16 Iranian assets in New York that are the subject of two other

17 pending actions in this district before Judge Barbara Jones.

18 Plaintiff contends that he holds a charging lien against any

19 proceeds recovered by the underlying plaintiffs and that

20 enforcement of the lien against the Iranian assets is proper

21 under 28 U.S.C. section 1655.

22          However, in this Court's view, there is a fundamental

23 flaw in plaintiff's argument.  The charging lien he seeks to

24 enforce attaches only to proceeds actually recovered by the

25 underlying plaintiffs in satisfaction of their judgment.  It

does not attach to the Iranian assets themselves.  The plaintiff acknowledged this reality in the complaint by alleging that the lien will attach, and I quote, "if and when those assets are recovered by the Peterson plaintiffs."  See the complaint paragraph 14.  Since those assets have not yet been recovered, the lien has not attached and there exists no property in New York that could properly form the basis for in rem jurisdiction.

Because plaintiff's venue allegations are premised on in rem jurisdiction, defendants also argue that venue is improper.  If so, "whether dismissal or transfer is appropriate lies within the sound discretion of the district court."  Minnette v. Time Warner, 997 F.2d 1023, 1026 (2d Cir. 1993).

Under 28 U.S.C. section 1391(a), a civil action founded on diversity jurisdiction may "be brought only in (1) a judicial district where any defendant resides if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced if there is no district in which the action may otherwise be brought."

While plaintiff argues that venue is proper under section 1391(a)(3) on the grounds that defendants are subject

1  to personal jurisdiction in New York, "venue may be based on
2  section 1391(a)(3) only if neither section 1391(a)(1) nor (2)
3  can be satisfied." Doctors Associates, Inc. v. Stuart, 85 F.3d
4  975, 983 (2d Cir. 1996).
5         In this case, because a substantial part of the events
6  giving rise to plaintiff's claims occurred in the District of
7  Columbia, namely, partial negotiation of the parties' agreement
8  and plaintiff's representation of the underlying plaintiffs,
9  venue is proper in that district under section 1391(a)(2).
10 Plaintiff's reliance on section 1391(a)(3) is therefore
11 misplaced.
12        Because plaintiff chose to pursue this action in New
13 York based on questionable notions of in rem jurisdiction
14 rather than litigate in the District of Columbia, where venue
15 is clearly proper, this action is dismissed without prejudice.
16 I'll enter a short order on the docket reflecting this ruling.
17 This constitutes the decision of this Court.
18        Anything further?
19        MR. COBRINIK:  No, your Honor.
20        MR. BONNER:  No, your Honor.
21        MS. KAPLAN:  No, your Honor.
22        THE COURT:  Have a good weekend.
23        (Adjourned)
24
25